**Richard MARX, Individually and Kristina Marx, A Minor, Plaintiffs-Appellees,**

v.

**Glenn H. GUMBINNER, et al., Defendants,**

**Bruce H. Colton and Pamela J. Roebuck, Defendants-Appellants.**

No. 87–5449.

United States Court of Appeals, Eleventh Circuit.

Sept. 20, 1988.

Walter M. Meginniss, Asst. Atty. Gen., Tallahassee, Fla., for defendants-appellants.

Richard J. Troy, Chicago, Ill., for plaintiffs-appellees.

Appeal from the United States District Court for the Southern District of Florida.

Before TJOFLAT and HATCHETT, Circuit Judges, and LYNNE *, Senior District Judge.

TJOFLAT, Circuit Judge:

## I.

In the early hours of February 8, 1986, four-year-old Kristina Marx was brutally raped in a wooded gully in Port Salerno, a town in Martin County, Florida. Following the attack, Kristina wandered back to the home of Claire Leonard, a family friend with whom Kristina and her father, Richard Marx, had been staying overnight. Ms. Leonard, seeing that Kristina was covered with blood and dirt, immediately telephoned the Martin County Sheriff's Department. The police arrived on the scene, an ambulance was summoned, and Kristina was taken to a local hospital. In the emergency room at the hospital, Kristina allegedly told the attending physician that "Daddy left me out to sleep outside all night with my nightgown and he did this to me."

A few hours later, police interviewed Richard Marx. Suspecting that Marx was the perpetrator of the crime, the police officer in charge of the investigation, Officer Glenn Gumbinner, telephoned Pamela Roebuck, an assistant state attorney, for advice on how to proceed. Gumbinner recounted to Roebuck the facts known to him and asked whether he had sufficient grounds to arrest Marx. Roebuck told Gumbinner that she would telephone her superior, state attorney Bruce Colton, and seek his opinion. After having elicited Colton's opinion, Roebuck called Gumbinner back and told him that sufficient grounds probably existed to arrest Marx, but that he should defer making the arrest until after the police had obtained a statement from Kristina.[1] The police took a statement as advised, and, soon thereafter, placed Marx under arrest.

On February 10, the police requested Marx to provide them with a blood sample for use in determining whether he was the source of semen taken from Kristina's body. Marx refused to provide the sample. That same day, a probable cause hearing was conducted before a county judge pursuant to Fla.R.Crim.P. 3.133(a)(1).[2] The judge found probable cause to believe that Marx had committed aggravated sexual battery upon Kristina, and ordered that he be held without bond.

After the probable cause hearing, assistant state attorney Roebuck visited the hospital on a number of occasions to question Kristina. On at least one of these occasions, Roebuck was accompanied by state attorney Colton. On February 26, Roebuck, after having conferred with Colton, filed an information charging Richard Marx with sexual battery and kidnapping. On February 27, Roebuck petitioned the county court to enter an order requiring Marx to provide the police with hair, blood, and saliva samples.

On March 4, a bail hearing was held, bond was set, and, on posting the bond, Marx was released from custody. On March 5, the court ordered Marx to provide the hair, blood, and saliva samples. The

* Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. Marx had earlier requested that he be given a polygraph test, asserting that such a test would show that his protestations of innocence were truthful. During their second telephone conversation, Roebuck, aware that Marx had requested a polygraph test, apparently told Officer Gumbinner to administer the test before making the arrest.

2. That rule provides that "[i]n all cases where the defendant is in custody, a nonadversary probable cause determination shall be held before a magistrate within 72 hours from the time of the defendant's arrest."

samples were taken that same day. The following day, laboratory technicians determined, based on analysis of the blood sample, that Marx could not have been the source of the semen taken from Kristina's body. Upon being apprised of the laboratory results, the state attorney's office immediately nol-prossed the case against Marx, and issued the following press release:

The Martin County Sheriff's Office in conjunction with the State Attorney's Office announces that:

Charges were dismissed today against Richard Marx based upon scientific examinations, the results of which indicate that he is not the perpetrator.

Prior to his arrest, the victim had positively identified Marx as the offender to hospital personnel, and Marx had requested to take, taken, and failed a polygraph examination. The victim had additionally identified Marx as the offender to Law Enforcement Officials prior to the filing of formal charges.

Law Enforcement Officials had attempted to obtain the evidence necessary for scientific examination immediately after Marx's arrest. However, Marx refused through his attorneys, as is his right, until Court Order had been obtained requiring him to give such evidence.

Efforts are continuing in identifying and apprehending the offender/s of this crime.

Marx thereafter filed a complaint in the district court under 42 U.S.C. § 1983 (1982), seeking injunctive relief and money damages on behalf of himself and on behalf of Kristina, as her next friend. Among those named as defendants were Roebuck, Colton, various police officers who participated in Marx's arrest and the ensuing investigation, and Dr. John Crouch, the emergency room physician who told police investigators that Kristina had identified Marx as her assailant.

This appeal concerns only the two prosecutors, Roebuck and Colton. Marx asserted a number of claims against Roebuck and Colton, some on behalf of himself, and some on behalf of Kristina. He asserted (1) that Roebuck and Colton caused him to be unlawfully arrested and detained in violation of both state law and the due process clause of the fourteenth amendment, (2) that they additionally violated his fourteenth amendment due process rights by issuing the press release,[3] (3) that they violated Kristina's fourteenth amendment due process rights by visiting and interviewing her at the hospital, and (4) that they violated Kristina's fourteenth amendment due process rights by procuring explicit photographs of her injuries and "distribut[ing] said photo[graphs] to other law enforcement agencies that had no connection whatsoever" to the prosecution of Kristina's case. As to the first three claims, Marx sought monetary relief. As to the fourth claim, he sought both monetary and injunctive relief.

Roebuck and Colton moved the district court to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, to enter summary judgment on all claims pursuant to Fed.R.Civ.P. 56. As to each of the claims, Roebuck and Colton asserted that they were absolutely immune to suit for money damages under the rule of *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The district court treated the defendants' motion as one for summary judgment and denied it. Roebuck and Colton now seek to appeal from that ruling, contending that the district court's order was a "final decision" within the meaning of 28 U.S.C. § 1291 (1982).

## II.

### A.

We first address the issue of whether we have jurisdiction to entertain the

---

**3.** The second claim is not in the complaint. It is included, however, in Marx's response to the defendants' motion to dismiss. Without objection, the defendants responded to the allegation when they argued their motion before the district court. The district court therefore treated the allegation as if it had been raised in Marx's complaint. *See* Fed.R.Civ.P. 15(b). Henceforth, when we refer to "Marx's complaint," we mean all the allegations that the district court treated as having been presented in that pleading.

appeal. The Supreme Court has held that an order denying official immunity in a section 1983 suit is an immediately appealable "collateral order" within the doctrine enunciated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *See Mitchell v. Forsyth*, 472 U.S. 511, 526–27, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985) (assertion of qualified immunity by former Attorney General); *Nixon v. Fitzgerald*, 457 U.S. 731, 743, 102 S.Ct. 2690, 2697–98, 73 L.Ed.2d 349 (1982) (assertion of absolute immunity by former President); *see also Harris v. Deveaux*, 780 F.2d 911, 913 (11th Cir.1986) (assertion of absolute immunity by judge). The Supreme Court has reasoned that if immunity has been erroneously denied by the district court and an immediate appeal is not permitted, the right at issue will be irretrievably lost, for the right is "an *immunity from suit* rather than a mere defense to liability." *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815. Erroneously subjecting an official to trial defeats the very purpose of the immunity doctrine, which is to shield officials from the distractions of litigation arising from the performance of their official functions. The mere threat of such litigation is deemed pernicious because it "dampen[s] the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." *Harlow v. Fitzgerald*, 457 U.S. 800, 814, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982) (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir.1949), *cert. denied*, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950)).

As a general matter, then, a denial of absolute immunity is immediately appealable. In this case, however, we must address a further issue before we can proceed to entertain the appeal. The Third Circuit has held that where a plaintiff has sought both monetary and injunctive relief against a government official, a denial of immunity as to the damages liability is not immediately appealable. *Prisco v. United States*, 851 F.2d 93 (3d Cir.1988). The court reasoned that since official immunity protects government officials only from suit for money damages,[4] the defendant would have to stand trial on the claim for injunctive relief regardless of the outcome of an interlocutory appeal; therefore, the court concluded, the policy served by allowing an immediate appeal was not present. Under the Third Circuit's rule, we would have no jurisdiction to entertain Marx's appeal, because he sought injunctive as well as monetary relief in the district court.[5]

We are persuaded, however, to reject the Third Circuit's rule and to join the ranks of our sister circuits that have held that a defendant may immediately appeal a denial of official immunity as to damages claims even though a claim for injunctive relief remains pending in the district court. *See Young v. Lynch*, 846 F.2d 960, 961–63 (4th Cir.1988)[6]; *DeVargas v. Mason & Hanger–Silas Mason Co.*, 844 F.2d 714, 717–18 (10th Cir.1988); *Drake v. Scott*, 812 F.2d 395, 398 (8th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); *Scott v. Lacy*, 811 F.2d 1153, 1153–54 (7th Cir.1987); *Kennedy v. City of Cleveland*, 797 F.2d 297, 306 (6th Cir.1986), *cert. denied*, 479 U.S. 1103, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987); *De Abadia v. Izquierdo Mora*, 792 F.2d 1187, 1188–90 (1st Cir. 1986). The problem with the Third Circuit's view is that it fails to take into account the difference, from a government official's perspective, between having to stand trial on a claim for injunctive relief and having to stand trial on a claim for money damages. In the first instance, the defendant, if he loses the suit, will simply be ordered by the court to do something, at the state's expense, in his official capacity. In the second instance, in contrast, the

---

**4.** *See Pulliam v. Allen*, 466 U.S. 522, 542, 104 S.Ct. 1970, 1981, 80 L.Ed.2d 565 (1984).

**5.** In *Mitchell*, the Supreme Court expressly left unanswered the question of whether an immediate appeal would be allowed under such circumstances. *See Mitchell*, 472 U.S. at 519 n. 5, 105

S.Ct. at 2812 n. 5. In *Riley v. Wainwright*, 810 F.2d 1006, 1007 (11th Cir.1987), this court noted that the question remained an open one.

**6.** *Young* overruled *Bever v. Gilbertson*, 724 F.2d 1083 (4th Cir.1984).

losing defendant will be liable in his *personal* capacity for a monetary payment of some amount; even if he ultimately prevails in an appeal from final judgment, his personal assets will be subject to attachment pending the appeal unless he posts, at his own expense, a supersedeas bond. Obviously, compared to the threat of exposure to the first kind of suit, the threat of exposure to the second kind of suit is much more likely to have the effect of dampening the ardor with which the individual carries out his official functions.

Our point is that the entitlement to be free from suit on a claim for money damages is, in the context of a suit against a government official, conceptually distinct from an entitlement to be free from suit on a claim for injunctive relief. Once that observation is accepted, the rationale underlying the Third Circuit's rule breaks down. Simply put, even if the defendant will be subject to suit on a claim for injunctive relief, the policy reasons for according the government official immunity to suit for money damages—and hence the reasons for allowing an immediate appeal if that immunity is denied—remain. We hold, therefore, that the pending claim for injunctive relief does not prevent us from entertaining the defendants' appeal.

### B.

Before examining the district court's denial of immunity, we note that the court's memorandum order evinces some confusion over precisely how to handle assertions of absolute immunity. To alleviate the confusion that may exist, and to establish a framework for the review we shall undertake in this appeal, we make the following preliminary comments.

■ As we observed above, absolute immunity is an entitlement to be free from suit for money damages. To repeat, the purpose of the immunity is to shield officials from the distractions of litigation arising from the performance of their official functions. To fulfill its purpose, official immunity protects government officials not only from having to stand trial, but also from having to bear the other burdens attendant to litigation, including pretrial discovery. *See Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815 (essence of absolute immunity is the "entitlement not to have to ... stand trial or face the other burdens of litigation"); *Martin v. District of Columbia Metro. Police Dep't*, 812 F.2d 1425, 1430 (D.C.Cir.1987) ("Discovery is itself one of the burdens from which defendants are sheltered by the immunity doctrine."); *Elliott v. Perez*, 751 F.2d 1472, 1478 (5th Cir.1985) ("[S]ubjecting officials to trial, traditional discovery, or both concerning acts for which they are likely immune undercuts the protection from governmental disruption which official immunity is supposed to afford."); *cf. Harlow*, 457 U.S. at 817, 102 S.Ct. at 2737–38 ("broad-ranging discovery" can be "particularly disruptive of effective government"). Accordingly, entitlement to absolute immunity must be determined as early as possible.

■ Thus, a government official who is potentially entitled to absolute immunity may seek to establish his immunity in the following manner. Upon being served with a complaint, he may move the district court pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint; alternatively, he may file an answer admitting the facts alleged in the complaint, and then move the court pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings.[7] In either case, the defendant has tied the plaintiff to the factual

---

7. The plaintiff must allege, as an element of his cause of action under section 1983, that the defendant acted under color of state law. Such allegation will invariably disclose whether the defendant held some official position—such as that of a prosecutor or judge—to which absolute immunity potentially attaches. The complaint will also disclose the action complained of. *See Hanson v. Town of Flower Mound*, 679 F.2d 497, 504 (5th Cir.1982) (to state claim under section 1983, pleader must allege specific facts in support of the claim). From these allegations, the court will usually be able to determine whether absolute immunity bars the plaintiff's claim. In those few cases where the court will not be able to make the determination due to the vagueness of the plaintiff's factual allegations, means exist to compel a more specific statement of the facts underpinning the plaintiff's claim. *See infra* part II.C.4.

allegations of each claim in his complaint,[8] and the district court is left to decide a purely legal question: Do those factual allegations disclose activities protected by absolute immunity? If they do, that is the end of the inquiry, and the district court must grant the defendant's motion. *Cf. Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987). If they do not, then the court may, of course, later revisit the issue on a motion for summary judgment or at pretrial conference. With this framework in mind, we turn to the merits of this appeal.

### C.

In *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Supreme Court held that a prosecutor is absolutely immune from civil suit for damages under section 1983 for actions taken "in initiating a prosecution and in presenting the State's case." *Id.* at 431, 96 S.Ct. at 995. The Court left open the question whether absolute immunity would extend to "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of an advocate." *Id.* at 430–31, 96 S.Ct. at 995. That question was considered by this circuit by *Marrero v. City of Hialeah,* 625 F.2d 499 (5th Cir. 1980),[9] *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981), and we concluded that absolute immunity did not extend to such activities. Thus, for example, we held that where a prosecutor has performed "functions analogous to those of a policeman ferreting out crime," *id.* at 510, he is not entitled to absolute immunity, but only to the kind of qualified immunity to which police officers are entitled. *Marrero* establishes a broad dichotomy: those activities connected with a prosecutor's responsibility to initiate a prosecution and present the state's case are protected by absolute immunity, while other activities in which prosecutors engage are, at most, accorded only qualified immunity. The dividing line is amorphous, and the process of determining on which side of the line particular kinds of conduct fall has proceeded on a case-by-case basis.[10]

**8.** Like the motion for judgment on the pleadings, the motion to dismiss for failure to state a claim admits the plaintiff's factual allegations and impels the district court to reach a legal conclusion based on those facts. The two motions are different insofar as the district court, upon granting a motion to dismiss, will usually grant the plaintiff leave to amend the complaint. *See generally Czeremcha v. International Ass'n of Machinists & Aerospace Workers,* 724 F.2d 1552, 1556 (11th Cir.1984). The point, however, is that both procedural devices operate so as to require the plaintiff to allege facts which, if true, would show that the defendant acted outside the scope of absolute immunity.

**9.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**10.** This court has held that absolute prosecutorial immunity extends to presenting fraudulent and illegal evidence to a grand jury, *see Slavin v. Curry,* 574 F.2d 1256, 1264 (5th Cir.), *modified on other grounds,* 583 F.2d 779 (5th Cir.1978), interviewing witnesses before presenting them to a grand jury, *see Cook v. Houston Post,* 616 F.2d 791, 793 (5th Cir.1980), filing charges without jurisdiction, *see Henzel v. Gerstein,* 608 F.2d 654, 657 (5th Cir.1979), filing a baseless detainer, *id.,* preventing an individual from receiving a speedy trial, *see Prince v. Wallace,* 568 F.2d 1176, 1179 (5th Cir.1978), deliberately withholding material evidence at trial, *see Fullman v. Graddick,* 739 F.2d 553, 559 (11th Cir.1984); *Henzel,* 608 F.2d at 657, offering perjured testimony at trial, *see Fullman,* 739 F.2d at 559; *Henzel,* 608 F.2d at 657, offering a witness immunity in exchange for his testimony, *see Mullinax v. McElhenney,* 817 F.2d 711, 715 (11th Cir.1987), refusing to investigate complaints about the prison system, *Henzel,* 608 F.2d at 657, threatening vindictive prosecution, *id.,* and attempting to persuade an individual not to sue state officials in return for parole, *id.* On the other hand, we have held that absolute immunity does not extend to entrapping an individual into committing a criminal offense, *Mullinax,* 817 F.2d at 715, participating in a raid of a jail cell, *id.,* participating in a search and seizure, *see Marrero v. City of Hialeah,* 625 F.2d 499, 505 (5th Cir.1980), *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981), convening a news conference to announce the results of a search and seizure, *id.,* convening a news conference to announce the return of an indictment, *Stepanian v. Addis,* 699 F.2d 1046, 1048 (11th Cir.1983), or altering a trial transcript, *see Slavin,* 574 F.2d at 1264–65.

### 1.

■ Marx's first claim is that Roebuck and Gumbinner conspired with others to cause him to be arrested and detained in violation of both state law and the due process clause of the fourteenth amendment.[11] The factual allegation in Marx's complaint as to this claim is that Roebuck, after conferring with Colton, advised Officer Gumbinner to arrest Marx even though both Roebuck and Colton knew that probable cause for an arrest did not exist. In light of this factual allegation, the district court should have granted the defendants' motion to dismiss.[12]

In *Marrero*, we left open the question whether a prosecutor is entitled to absolute immunity where "he merely gave legal advice from his office in response to specific inquiries from police officers." *Marrero*, 625 F.2d at 506 n. 8. We now hold that absolute immunity adheres where, as here, the act complained of is that of rendering legal advice to police officers concerning the existence of probable cause to make an arrest.[13] The initial determination of whether such probable cause exists is part of the larger process of determining wheth-er to initiate a prosecution. The prosecutor, by alerting police officers when they lack sufficient grounds to make an arrest, can terminate that process early on, thus minimizing expenditure of prosecutorial resources as well as inconvenience to the putative arrestee. The general function of deciding whether to initiate a prosecution is a function to which absolute immunity clearly adheres, *see Imbler*, 424 U.S. at 431, 96 S.Ct. at 995, and we hold that it adheres here as well. *Accord Myers v. Morris*, 810 F.2d 1437, 1448 (8th Cir.1987) (prosecutor entitled to absolute immunity where she "provide[d] advice to law enforcement officials concerning the existence of probable cause and the prospective legality of arrest"), *cert. denied*, —— U.S. ——, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987).[14] The district court therefore erred in failing to dismiss the claim.

In a last-ditch effort to avoid application of absolute immunity as to this claim, Marx appears to argue that even if prosecutors have authority to advise police officers on whether probable cause exists to make an arrest, they have no authority to engage in Marx a rigged polygraph test. This allegation goes to the merits of Marx's claim and is irrelevant to the immunity inquiry. *Cf. Harris v. Deveaux*, 780 F.2d 911, 914 (11th Cir.1986).

11. Marx also asserted in his complaint that Roebuck and Colton participated in a "plan and procedure" by which individuals like Marx were routinely arrested without probable cause, denied bail, and held in custody by the Martin County Sheriff's Department. Marx apparently seeks both monetary and injunctive relief as to this claim. To the extent he seeks monetary relief, he would of course be entitled to recover only for his own injury—that is, the personal injury he suffered as a result of his own unlawful arrest and detention. In this respect, the claim is indistinguishable from Marx's first claim, and we therefore do not treat it separately; our conclusions as to the first claim apply equally here. To the extent Marx seeks injunctive relief, we do not consider the claim in this appeal, because official immunity does not apply to claims for injunctive relief. *See Pulliam v. Allen*, 466 U.S. 522, 542, 104 S.Ct. 1970, 1981, 80 L.Ed.2d 565 (1984).

12. The other factual allegations made in connection with this claim pertained to the issue of whether Roebuck and Colton in fact knew that no probable cause existed to arrest Marx. For example, to support his claim that Roebuck and Colton possessed this knowledge, Marx contended that Roebuck told Officer Gumbinner in the course of their second telephone conversation on February 8 that he should administer to

13. We expressly limit our holding to the act of rendering advice concerning probable cause to make an arrest. "Legal advice" is a broad term that may include many different kinds of advice, the rendering of some of which may not be protected by absolute immunity. *Compare Wolfenbarger v. Williams*, 826 F.2d 930, 937 (10th Cir.1987) (prosecutor not entitled to absolute immunity where he advised police officers to seize stolen property and return it to its owner) *with Henderson v. Lopez*, 790 F.2d 44, 47 (7th Cir.1986) (prosecutor entitled to absolute immunity where he advised county officials concerning the legality of detaining individual in jail).

14. In addition to the Eighth Circuit, the Fourth Circuit has had occasion to consider whether absolute immunity adheres where a prosecutor rendered advice to police officers concerning probable cause to make an arrest. *See Kipps v. Ewell*, 538 F.2d 564, 566 (4th Cir.1976). The Fourth Circuit avoided deciding the issue, however, because under the facts of the case the prosecutor was entitled to qualified immunity as a matter of law. *Id.*

the kind of unlawful conduct alleged here, that is, they have no authority to advise police officers that probable cause exists when they know that it does not. This argument shows a misunderstanding of the absolute immunity doctrine. In effect, Marx argues that whenever an official engages in unlawful conduct, he acts outside his authority for purposes of his entitlement to absolute immunity. As Judge Learned Hand observed,

> [a] moment's reflection shows ... that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him.

*Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir.1949); *see also Nixon v. Fitzgerald*, 457 U.S. 731, 756–57, 102 S.Ct. 2690, 2705, 73 L.Ed.2d 349 (1982). Thus, Marx's final effort to avoid the application of absolute immunity as to this claim is clearly without merit.

### 2.

■ Marx's second claim is that Roebuck and Colton violated his fourteenth amendment due process rights by issuing a defamatory press release. With respect to the immunity inquiry, the relevant factual allegation presented in Marx's complaint was that Roebuck and Colton issued a press release announcing their decision to nol-pros the charges against him.

This court has on two occasions addressed the applicability of absolute immunity to claims based on prosecutorial statements to news media. In *Marrero,* we held that absolute immunity did not adhere where the prosecutor convened a news conference, prior to the return of an indictment, to announce the results of a search and seizure. We commented that the statements "were not made in connection with either the initiation of a prosecution or with activities undertaken in following up a prosecution." *Marrero,* 625 F.2d at 506. Notwithstanding the suggestion that the availability of absolute immunity hinged on whether the subject matter of the statements to the media pertained to the initiation or follow up of a prosecution, we later held in *Stepanian v. Addis,* 699 F.2d 1046, 1048 (11th Cir.1983), that absolute immunity did not adhere where the prosecutor convened a press conference to announce the return of an indictment. In view of this precedent, we are constrained to conclude that absolute immunity likewise does not adhere where a prosecutor announces to the media the discontinuation of a prosecution. Thus, the district court correctly denied the defendants' motion to dismiss as to the second claim.[15]

### 3.

■ Marx's third claim, which is a claim he asserts on behalf of Kristina, is that Roebuck and Colton violated Kristina's right to privacy under the due process clause of the fourteenth amendment.[16] The factual allegation in Marx's complaint relevant to this claim is that Roebuck and Colton visited Kristina at the hospital and

---

**15.** In their reply brief, Roebuck and Colton argue that even if they are not entitled to immunity as to this claim, the district court should still have dismissed it for failure to state a claim upon which relief can be granted. Roebuck and Colton correctly note that reputation, standing alone, is not an interest protected by the due process clause, *see Emory v. Peeler,* 756 F.2d 1547, 1554 (11th Cir.1985), and they assert that Marx has alleged nothing more than an injury to his reputation. Even if Roebuck and Colton had raised this issue in their motion to dismiss, which they did not, and even if the district court had considered the issue in disposing of the motion, which it did not, we would lack jurisdiction to consider the issue in this interlocu-

tory appeal. The scope of the matters which we have power to review is limited. Our power to review extends only so far as the rationale that permits the defendants to appeal in the first place—that is, it extends only to the denial of immunity. *See supra* part II.A.; *but cf. Drake v. Scott,* 812 F.2d 395, 399 (8th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987).

**16.** Again, we are not, nor could we be, considering in this appeal whether, apart from the immunity issue, Marx's allegations otherwise state a claim for relief. *See supra* note 15.

subjected her to questioning about her assailant. In light of this allegation, the district court should have granted the defendants' motion to dismiss.

We begin with the observation that to grant a prosecutor absolute immunity for the decisions to initiate and pursue a prosecution while subjecting him to liability for action taken to secure the information necessary to make those decisions "would only foster uninformed decisionmaking and needless actions." *Forsyth v. Kleindienst,* 599 F.2d 1203, 1215 (3d Cir.1979), *cert. denied,* 453 U.S. 913, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981). Our own court has held that "a prosecutor is entitled to absolute immunity for the factual investigation necessary to prepare a case." *Mullinax v. McElhenney,* 817 F.2d 711, 715 (11th Cir. 1987). Such investigation, we have held, includes interviewing witnesses before presenting them to the grand jury. *See Cook v. Houston Post,* 616 F.2d 791, 793 (5th Cir.1980). Surely, it also includes interviewing the victim of the crime. The district court therefore erred in failing to dismiss this claim.

4.

■ Marx's fourth claim is also a claim which he asserts on behalf of Kristina. As in the third claim, Marx alleges in this claim that Roebuck and Colton violated Kristina's right to privacy under the due process clause of the fourteenth amendment. Here, the factual allegation supporting the claim is that Roebuck and Colton procured explicit photographs of Kristina's injuries and "distributed said photo[graphs] to other law enforcement agencies that had no connection whatsoever" to the prosecution of Kristina's case.

This factual allegation does not reveal the identity of the persons to whom the photographs were allegedly distributed; nor does it reveal the purposes to which the photographs were put after having been distributed. We are simply unable to say whether the alleged distribution of the pho-

tographs fell within the class of activities protected by absolute immunity. The district court ruled that the immunity question could not be decided on the basis of this allegation. We agree. Accordingly, the defendants' appeal insofar as it pertains to this claim is dismissed. *See Goddard v. Urrea,* 847 F.2d 765, 769 (11th Cir.1988).[17]

■ We do not by any means suggest that a claim so lacking in any factual allegations to support it must necessarily proceed to trial. Clearly, a plaintiff must not be permitted, through the use of the kind of "shotgun" pleading tactic evident here, to strip government officials of the protection provided by the official immunity doctrine. The policy underlying the doctrine requires that the defendant be able to seek dismissal of the claims against him as early in the litigation as possible; this policy is obviously thwarted if the plaintiff's complaint provides an inadequate factual basis upon which to decide a motion to dismiss. When this situation arises, the district court may exercise its inherent power to narrow the issues for trial and require the plaintiff to state with more specificity the factual allegations supporting the claim. Or, if the defendant has not yet filed an answer, he may move the district court pursuant to Fed.R.Civ.P. 12(e) for a more definite statement. In either case, the result is the same: the plaintiff is rightly compelled to commit himself to a set of facts upon which the question of absolute immunity can properly be decided.

III.

In sum, the district court correctly denied the motion to dismiss the plaintiff's second claim. It erred, however, in failing to dismiss the plaintiff's first and third claims. We dismiss the appeal insofar as it pertains to the fourth claim.

REVERSED in part, AFFIRMED in part, and DISMISSED in part.

17. This court held in *Goddard* that a denial of a motion for summary judgment based on a claim of official immunity is not an appealable final decision if the denial is due to the presence of disputed facts. *Goddard* recognizes that a decision on immunity is not reviewable until the facts material to the immunity inquiry have been settled.

HATCHETT, Circuit Judge, dissenting:

I respectfully dissent from the majority's holding that the court has jurisdiction over this appeal. Courts have allowed interlocutory appeals in cases where the district court denied immunity to public officials in damage actions. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed. 2d 411 (1985); *cf. Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). An interlocutory appeal becomes inappropriate where a plaintiff seeks injunctive relief as well as damages. *Prisco v. United States*, 851 F.2d 93 (3d Cir.1988).

The majority correctly notes that, "[e]rroneously subjecting an official to trial defeats the very purpose of the immunity doctrine...." Such reasoning in this case is misplaced. First, the resolution of the qualified immunity question as it relates to damages does not conclusively terminate the lawsuit. Where a plaintiff seeks damages and injunctive relief, the public official is going to be subjected to a trial with or without a valid claim of immunity. Therefore, the considerations that lead the courts to give an immediate appeal of an order rejecting an immunity claim are not present.

Congress enacted 28 U.S.C. § 1291 to limit federal appellate jurisdiction to "appeals from all final decisions of the district courts...." Congress thereby intended to avoid interlocutory or "piecemeal" litigation. *Flanagan v. United States*, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984); *De Abadia v. Izquierdo Mora*, 792 F.2d 1187, 1196 (1st Cir.1986) (Torruella, J., dissenting) (citing *Abney v. United States*, 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651 (1977)). Moreover, "[t]he defense of qualified official immunity, like the defense of absolute judicial or official immunity, is inapplicable to claims for prospective relief." *Prisco*, 851 F.2d at 95; *see also Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). As the Third Circuit correctly noted:

the policy rationale for qualified immunity is that we do not want officials to make discretionary decisions with one wary eye on their pocketbook. That policy rationale is not applicable to a suit for injunctive relief. An official acting in violation of law may in some instances be appropriately shielded from the threat of money damages recovery, but the policy reasons for such a shield do not confer discretion to continue acting illegally. [Citations omitted.]

*Prisco*, 851 F.2d at 95. Because resolution of the qualified immunity issue does not affect a claim for injunctive relief, the policy rationale for an interlocutory appeal is absent because the defendant must answer the claim for injunctive relief. A declaration of immunity from damages does not eliminate the diversion of an official's attention. Consequently, the availability of an immediate appeal, on an incomplete record, does not seriously affect the public official's attitude or behavior in performing the duties of office.

In further opening the door to interlocutory appeals, the majority contributes to an overburdened appellate docket and the escalating cost of litigation. It makes this contribution without sound reasons for doing so. Examine the dilemma in which this decision places the appellee/plaintiff. Although the plaintiff wins "round one," the plaintiff must now fight against the state's full economic and political resources on appeal with only the prospect that if the "round one" victory is sustained, after much delay, the expenses of "round two" must be borne.

The Supreme Court has cautioned against a broad interpretation of the *Cohen* collateral order doctrine. In *Flanagan v. United States*, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984), the Court noted:

The final judgment rule serves several important interests. It helps preserve the respect due trial judges by minimizing appellate-court interference with the numerous decisions they must make in the prejudgment stages of litigation. It reduces the ability of litigants to harass opponents and to clog the courts through a succession of costly and time-consuming appeals.

*Flanagan,* 465 U.S. at 264, 104 S.Ct. at 1054; *De Abadia,* 792 F.2d at 1201–02 (Torruella, J., dissenting).

I would dismiss this appeal and entertain it, if filed again, when a judgment is rendered on both the damage and equitable claims as to all parties.