John E. GREEN, Plaintiff-Appellee,

v.

J. Kenneth BRANTLEY, Edgar V. Lewis, Craig R. Smith, Garland P. Castleberry, Defendants-Appellants.

No. 89–8150.

United States Court of Appeals, Eleventh Circuit.

March 8, 1990.

---

James R. Schulz, Asst. U.S. Atty., Atlanta, Ga., Barbara L. Herwig, Appellate Staff, Civil Div., Wendy M. Keats, Dept. of

Justice, Washington, D.C., for defendants-appellants.

Gerald Cunningham, Office of Gerald Cunningham, Atlanta, Ga., for plaintiff-appellee.

Before VANCE [*] and KRAVITCH, Circuit Judges, and LYNNE,[**] Senior District Judge.

VANCE, Circuit Judge:

This is an interlocutory appeal of the denial of a motion for summary judgment on the ground of qualified immunity. 719 F.Supp. 1570 (N.D.Ga.1989). Defendants allege appellate jurisdiction under 28 U.S.C. § 1291, citing *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). We conclude that *Mitchell* does not apply and dismiss the appeal for want of jurisdiction.

## I. BACKGROUND

From 1974 until the events underlying this litigation, plaintiff-appellee John Green held a Designated Pilot Examiner's ("DPE") certificate. DPE certificates are issued by the Federal Aviation Administration ("FAA") to private pilots pursuant to 49 U.S.C.App. § 1355(a). A DPE certificate entitles the holder to conduct flight certification examinations and prepare the accompanying reports, for which he or she may charge a reasonable fee. Green received twelve one-year renewals and his latest term was set to expire on December 31, 1986.

The Mid–South Flight Standards District Office ("FSDO") of the FAA supervises the examiners in the Atlanta area where Green worked. Defendant Brantley is an Operations Inspector at the Mid–South FSDO. Defendant Lewis is the Operations Unit Supervisor of the Mid–South FSDO and Brantley's immediate supervisor. Defendant Craig is the Manager of the Mid–South FSDO and Lewis's immediate supervisor. Defendant Castleberry is the Regional Director of the FAA.

In early 1986, Brantley initiated an investigation of the pilot examiners' program under the jurisdiction of the Mid–South FSDO. Brantley reviewed Green's monthly activity report and discovered amounts of time spent on flight checks that Brantley considered inadequate. The defendants had earlier received complaints that Green had spent less time on his flight tests than the regulations required. Brantley reported Green's alleged irregularities to Lewis, who then authorized Brantley to conduct a preliminary investigation of Green's performance as an examiner.

In early June 1986, Brantley informed Green that he was being investigated. Brantley said that the FAA was concerned with the brevity of Green's flight tests, but did not present Green with specific charges, allow him to examine the records and complaints upon which any such charges were based, or allow him to respond. The defendants' silence continued even after Green wrote to Smith twice requesting that he be informed immediately of any charges and of any evidence against him.

In early July 1986, Brantley called Green and summoned him to a meeting the next day to discuss the investigation. Defendants refused to reschedule the meeting even though Green had booked several check rides that day. Lewis also refused to allow Green to bring an attorney to the meeting. At the meeting, Lewis and Smith told plaintiff that the time he had spent on flight checks was insufficient and that there were numerous written and oral complaints concerning his conduct as an examiner. At the conclusion of the meeting, Green was handed a letter summarizing the preceding discussion. Shortly thereafter Smith revoked Green's DPE certificate by letter. Green was never apprised of the evidence against him or given the opportunity to respond, although he specifi-

[*] Judge Robert S. Vance authored this opinion prior to his death on December 16, 1989.

[**] Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

cally requested the FAA to do both of these things before and during the meeting. Smith had discussed Green's case with FAA attorneys, who advised him that he could revoke Green's certificate without holding a formal hearing.

Green brought this *Bivens* action against the four FAA officials. In his complaint, he alleged two constitutional violations.[1] First, he alleged that by revoking his DPE certificate without adequate notice and a fair hearing defendants denied him a property right protected by the Administrative Procedure Act ("APA") and the fifth amendment. *See White v. Franklin*, 637 F.Supp. 601, 609 (N.D.Miss.1986). Green also alleged that defendants released stigmatizing information about him which damaged his professional reputation, thereby depriving him of a liberty interest without due process. *See Campbell v. Pierce County*, 741 F.2d 1342, 1344 (11th Cir. 1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1754, 84 L.Ed.2d 818 (1985).

Defendants filed a motion for summary judgment as to the property interest claim on the ground of qualified immunity. The district court denied their motion, finding that Green's DPE certificate was a "license," that Green was therefore entitled to the due process protection of the APA, and that this right had been clearly established by *White v. Franklin*, 637 F.Supp. 601 (N.D.Miss.1986). Defendants appealed to this court, basing the jurisdiction of their appeal on *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

## II. DISCUSSION

*Mitchell v. Forsyth* holds that the denial of a motion for summary judgment based on qualified immunity in a suit involving only legal claims is appealable as a collateral order under the doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Under *Cohen*, a decision of the district court is appealable if it falls within "that small class which finally determine

claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require appellate consideration be deferred until the whole case is adjudicated." 337 U.S. at 546. Because the facts of *Mitchell* and those of the present case differ in material respects, we have examined the policies behind the qualified immunity doctrine, the final judgment rule, the collateral order doctrine, and the *Mitchell* decision to determine whether this case warrants the extension of the collateral order doctrine. For the following reasons, we conclude that it does not.

### A. The Doctrine of Qualified Immunity

The doctrine of qualified immunity provides that government officials performing discretionary duties are immune from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This doctrine balances several extremely important but conflicting concerns. On one hand, an action for damages may provide the only remedy for one whose constitutional rights have been violated by a government official. *Id.* at 814, 102 S.Ct. at 2736. Furthermore, the possibility that such actions might be filed hopefully "deter[s] governmental officials from abusing their power in derogation of the Constitution." Note, *Qualified Immunity for Government Officials: The Problem of Unconstitutional Purpose in Civil Rights Litigation*, 95 Yale L.J. 126, 128 (1985). *But see* Meltzer, *Deterring Constitutional Violations by Law Enforcement Officials: Plaintiffs and Defendants as Private Attorneys General*, 88 Colum.L.Rev. 247, 284 (1988) (concluding in the context of suits against police officers that "the conditions of constitutional tort litigation ... are ones in which the deterrent effect is likely to be on the low side").

---

1. Green also alleged that defendants conspired to deprive him of his first amendment rights in retaliation for his testimony against the FAA in an unrelated action. The district court granted summary judgment for defendants on this claim and that ruling is not before us on this appeal.

On the other hand, lawsuits against government officials impose large social costs in addition to those borne personally by the defendants. Litigation diverts government energy and financial resources from pressing public problems. *Harlow,* 457 U.S. at 814, 102 S.Ct. at 2736. The threat of personal liability may discourage able persons from accepting public office. *Id.* Finally, the fear of being sued may deter an official from executing his or her office with the decisiveness and judgment required by the public good. *Scheuer v. Rhodes,* 416 U.S. 232, 240–41, 94 S.Ct. 1683, 1688–89, 40 L.Ed.2d 90 (1974). Thus, the doctrine of qualified immunity recognizes the importance of vindicating constitutional wrongs but also recognizes that "claims frequently run against the innocent as well as the guilty—at a cost not only to defendant officials, but to society as a whole. *See generally* Schuck, *Suing Our Servants: The Court, Congress, and the Liability of Public Officials for Damages,* 1980 S.Ct.Rev. 281, 324–27." *Harlow,* 457 U.S. at 814, 102 S.Ct. at 2736.

### B. *Appeals from the Denial of Summary Judgment Under Mitchell*

In order to safeguard the policies underlying the doctrine of qualified immunity, the Supreme Court has determined that a denial of summary judgment on qualified immunity grounds, to the extent that it turns on an issue of law, is appealable under the collateral order exception to the final judgment rule. *Mitchell,* 472 U.S. at 530, 105 S.Ct. at 2817.

The final judgment rule derives its name from 28 U.S.C. § 1291, which vests federal appellate courts with "jurisdiction of appeals from all final decisions of the district courts ... except when direct review may be had in the Supreme Court." The Supreme Court has interpreted this language to forbid an appeal under section 1291 unless there has been "a decision by the District Court that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978)

(quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)).

The requirement that a judgment must be final before an appeal may be taken was first embodied in the Judiciary Act of 1789, Ch. 20, § 22, 1 Stat. 73, 84 (codified at 28 U.S.C. § 1291 (1982)); Note, *Interlocutory Appeals of Orders Denying Claims of State Action Antitrust Immunity,* 49 Ohio St.L.J. 653, 657 (1988) (hereinafter "Ohio State Note"), and it has been described as "'the dominant rule in federal appellate practice.'" Note, *Quick Termination of Insubstantial Civil Rights Claims: Qualified Immunity and Procedural Fairness,* 38 Vand.L.Rev. 1543, 1571 (1985) (hereinafter "Vanderbilt Note") (quoting 9 J. Moore, *Moore's Federal Practice* ¶ 110.06 (2d ed. 1985)). It gives effect to several important policy considerations:

> It emphasizes the deference that appellate courts owe to the trial judge as the individual initially called upon to decide the many questions of law and fact that occur in the course of a trial. Permitting piecemeal appeals would undermine the independence of the district judge, as well as the special role that individual plays in our judicial system. In addition, the rule is in accordance with the sensible policy of 'avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to the entry of judgment.' ... The rule also serves the important purpose of promoting efficient judicial administration.

*Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981) (citations omitted); *see,* Note, *Qualified Immunity and Interlocutory Appeals: Is the Protection Lost When Legal and Equitable Claims are Joined?,* 87 Colum.L.Rev. 161, 164 (1987); Ohio State Note, *supra,* at 657–58. The rule prevents clogging the appellate docket, *see* Ohio State Note, *supra,* at 658, and saves appellate courts from issuing essentially advisory opinions. M. Tigar, *Federal Appeals: Jurisdiction and Practice* § 2.02

(1987) (footnotes omitted). In short, the rule is "the means for achieving a healthy judicial system." *Cobbledick v. United States*, 309 U.S. 323, 326, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940).

■■■ Because these concerns are so strong, the final judgment rule applies even in the face of substantial costs. For example, pretrial discovery orders generally are not immediately appealable. An aggrieved party wishing immediate review must defy the order, suffer a contempt citation, and challenge the order on direct appeal of the citation. *Cobbledick*, 309 U.S. at 327–28, 60 S.Ct. at 542–43. Similarly, partial summary judgment entered in favor of fewer than all defendants generally is not immediately appealable absent the district court's determination under Fed.R. Civ.P. 54(b) that there is "no just reason for delay" and the entry of final judgment. *Bailey v. McCann*, 539 F.2d 501 (5th Cir. 1976); M. Tigar, *supra*, at § 2.15.

Notwithstanding the importance of finality, however, the Court has recognized through the collateral order doctrine that a small class of cases demand immediate review. Under this doctrine, an order is appealable under section 1291 if "it conclusively determine[s] the disputed question, resolve[s] an important issue completely separate from the merits of the action, and [is] effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand*, 437 U.S. at 468, 98 S.Ct. at 2458. These requirements themselves express the reasons for the rule: a litigant may suffer irreparable harm if not permitted to appeal, but the disposition of the appeal will not affect the main action.

In *Mitchell v. Forsyth*, the Supreme Court applied the *Coopers* test to the denial of summary judgment on the ground of qualified immunity and held that such a

denial is a collateral order. With respect to the requirement that the order be effectively unreviewable, the Court noted that "*Harlow* thus recognized an entitlement not to stand trial or face the other burdens of litigation.... The entitlement is an *immunity from suit* rather than a mere defense to liability." *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815 (emphasis in original). If the final judgment rule were applied unthinkingly, therefore, this right would be lost because a government official with a valid but unrecognized qualified immunity claim would be forced to stand trial.[2]

### C. Whether Mitchell Applies to the Present Case

Defendants have asserted qualified immunity with respect to their actions in revoking Green's DPE certificate. They contend that Green had no property interest in the certificate and that, even if he had, the law governing that interest was not clearly established at the time of the revocation. If we reverse the district court's denial of their summary judgment motion, defendants will avoid the burden of trial on these allegations.

■■■ Yet, as appellants' counsel conceded during oral argument, Green's claim that defendants deprived him of a liberty interest without due process will proceed to trial no matter how we decide this appeal. It is true that a person's interest in his reputation alone, apart from some more tangible interest, does not rise to the level of a liberty interest protected by the fifth amendment. *See Paul v. Davis*, 424 U.S. 693, 712, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976); Annotation, *Supreme Court's Views as to Concept of "Liberty" Under Due Process Clauses of Fifth and Fourteenth Amendments*, 47 L.Ed.2d 975, 999–1001 (1977). Green has alleged more than an injury to reputation however; he has

---

**2.** Regarding the other two components of a collateral order, the Court held that the denial of a defendant's motion for summary judgment on the ground of qualified immunity was "conclusive" because any such judgment conclusively abrogated the defendant's right to avoid trial, and because a claim of immunity is "conceptu-

ally distinct" from the plaintiff's claim that his rights have been violated. 472 U.S. at 527–28, 105 S.Ct. at 2816. Because we conclude that the defendants do not meet the first prong of the collateral order test we do not discuss the remaining two prongs.

alleged that the dissemination of information about his performance as an examiner was related to the revocation of his DPE certificate. This circuit has recognized that damage to reputation sustained in conjunction with termination of employment may give rise to a due process claim for deprivation of liberty. *Campbell v. Pierce County*, 741 F.2d at 1344; *see Buxton v. City of Plant City*, 871 F.2d 1037, 1045 (11th Cir.1989); *Little v. City of North Miami*, 805 F.2d 962, 969 (11th Cir.1986). This liberty interest survives even where, as appellants claim here, the withdrawal of employment does not impinge on a recognizable property interest. *Campbell*, 741 F.2d at 1344.

■■■ Appellants will therefore proceed to trial on the same common nucleus of operative facts regardless of how this court rules on the district court's denial of summary judgment. True, there are several differences between the liberty and property claims, such as the process due and the amount of damages, if any. These differences, however, do not materially affect the acts of the parties out of which the plaintiff's claims arise.

Appellants therefore seek application of *Mitchell* when no order we could fashion would effectuate *Mitchell*'s purpose: the right to avoid the many significant costs of trial. "Where the district court rejects claims that official immunity ... preclude[s] trial, the *special nature of the asserted right justifies immediate review. The very purpose of such immunities is to protect the defendant from the burdens of trial,* and the right will be irretrievably lost if its denial is not immediately appealable." *Mitchell*, 472 U.S. at 537, 105 S.Ct. at 2821 (O'Connor, J., concurring) (citations omitted) (emphasis added). Here no such right will be lost, because this court can offer no relief which would qualitatively reduce the burdens of litigation on these defendants.

The case before us is distinguishable from *Marx v. Gumbinner*, 855 F.2d 783 (11th Cir.1988). In *Marx*, the plaintiff stated both legal and equitable claims. Because government officials can only assert qualified immunity against claims for damages, equitable claims proceed to trial even when the defendants assert qualified immunity. *Id.* at 787 & n. 4. *Marx* held that the denial of summary judgment on the legal claims alone nonetheless constituted an immediately appealable collateral order. 855 F.2d at 787–88. Because the government defendant faces *personal* liability for damages, but the government bears the costs of injunctive relief, the legal claims are far more threatening. *Id.* The *Marx* court recognized that permitting government defendants to suffer a trial facing the threat of personal liability would "dampen[ ] the ardor with which the individual carries out his official functions." *Id.* at 788. Therefore, in the court's view, immediate appeal of the denial of summary judgment was necessary to preserve the interests underlying *Mitchell*.

In this case, however, any such justification is absent. The defendant FAA officials will face personal liability regardless of the outcome of the present motion. All this court can do is adjust the amount of potential liability at stake. No right is absolutely lost by our refusal to hear their appeal now, and it therefore is impossible to conclude that their motion would be "effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand*, 437 U.S. at 468, 98 S.Ct. at 2458.

Although the single compelling justification for the application of *Mitchell* is absent in the present case, the policies underlying the final judgment rule remain persuasive. Appeals such as this one would saddle the federal appellate courts [3] with cases in which they could not grant meaningful relief within the meaning of *Mitchell*. Civil rights litigation would become more expensive and therefore less effec-

---

3. *See* Vanderbilt Note at 1583. The author of that note conducted a Westlaw database search on August 24, 1985. He found 296 cases in the federal district courts and 206 cases in the

courts of appeal after *Harlow* "in which qualified immunity was a summary judgment issue." *Id.* at 1583 n. 233.

tive. The district court's authority would suffer. Accordingly, we find that this appeal does not fall within 28 U.S.C. § 1291. We hold that the denial of summary judgment on the ground of qualified immunity is not a collateral order whenever the defendants would be subjected to a trial for damages arising from the same common nucleus of operative facts regardless of the outcome of the motion.

■ It is worth noting that our decision today does not entirely foreclose government officials from taking appeals on facts such as the present ones. Defendants remain free to request the district court to certify an appeal under section 1292(b). *Mitchell*, 472 U.S. at 554, 105 S.Ct. at 2830 (Brennan, J., dissenting). At least one commentator has concluded that certified interlocutory appeals are a superior alternative because they require the discretionary approval of both the district and circuit courts, thereby abating the concern about the effect of interlocutory appeals on judicial administration. *See* Vanderbilt Note, *supra*, at 1584–87.

## III. CONCLUSION

■ It is our duty to examine the basis of our jurisdiction independently and to dismiss any case in which jurisdiction does not affirmatively appear in the record. *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884). Based on our examination of the record and for the reasons discussed above we order this appeal DISMISSED for lack of jurisdiction.

KRAVITCH, Circuit Judge, specially concurring:

I am fully in agreement with the scholarly opinion of Judge Vance. I write separately because I believe the trial court erred in failing to address the defendants' assertion of qualified immunity with re-

spect to the plaintiff's claim that he was deprived of a liberty interest in his reputation without due process. Had the trial court addressed this defense or had the defendants asserted on appeal that its failure to do so was error, I believe we would have had jurisdiction to hear this appeal.

In *Mitchell v. Forsyth*, the Supreme Court established the standard by which courts must analyze assertions of qualified immunity. 472 U.S. 511, 527–28, 105 S.Ct. 2806, 2816–17, 86 L.Ed.2d 411 (1985). The Court held that in evaluating claims of immunity a reviewing court

> need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions....

*Id.* at 528, 105 S.Ct. at 2816. The Court emphasized "that the appealable issue is a purely legal one: whether the facts alleged (by the plaintiff, or in some cases, the defendant) support a claim of violation of clearly established law." *Id.* at 528 n. 9, 105 S.Ct. at 2816 n. 9.

This standard for review is no different from that which a district court must follow in evaluating claims of qualified immunity. When a defendant has interposed a qualified immunity defense the district court must determine whether, accepting the plaintiff's allegations of fact as true, the defendant has violated clearly established law. *See id.; Rich v. Dollar*, 841 F.2d 1558, 1561 & n. 1 (11th Cir.1988); *Goddard v. Urrea*, 847 F.2d 765, 769 (11th Cir.1988) (Johnson, J., dissenting). *But see Peppers v. Coates*, 887 F.2d 1493, 1496–97 & n. 7 (11th Cir.1989) (following approach of majority in *Goddard*).[1] If a plaintiff's

---

1. Recently, a panel of the Eleventh Circuit adopted the dissenting view expressed by Judge Johnson in *Goddard,* stating: "factual *disputes* do not affect qualified immunity analysis since 'that analysis assumes the validity of the plaintiff's version of the facts and then examines whether those facts support a claim of violation of clearly established law.'" *Horlock v. Georgia*

*Dept. of Human Resources,* 890 F.2d 388, 392–93 (11th Cir.1989) (quoting *Goddard,* 847 F.2d at 769 (Johnson, J., dissenting)). Because *Horlock* conflicts with the panel decisions in *Goddard* and *Peppers, Horlock* has been vacated and will be heard by the full court *en banc* to resolve the divergence of authority in this circuit. *Horlock v. Georgia Dept. of Human Resources,* 890 F.2d

factual allegations fail to establish a violation of clearly established law, then the court must grant the defense of qualified immunity. Conversely, if the facts alleged by the plaintiff establish such a violation, then the court must deny the defendant's claim of immunity. In either case, the court's disposition of the qualified immunity claim is ripe for appeal to this court (assuming the other prerequisites for appeal are satisfied) as either a final judgment or as an appealable collateral order under *Mitchell* as interpreted by the panel opinion in this case.[2]

Here, the district court erred by not addressing the defendants' qualified immunity claim. The court noted that plaintiff had alleged facts supporting his claim that he was deprived of a liberty interest in his reputation. *Green v. Brantley,* 719 F.Supp. 1570, 1576 (N.D.Ga.1989). The judge also determined that the protectable liberty interest was "well settled." *Id.* at 1583. Nevertheless, the court declined to pass on the qualified immunity issue because "an issue of fact exists for the jury as to whether the defendants released information that damaged the plaintiff's reputation prior to his termination." *Id.* at 1576.

The defendants' dispute of the facts alleged by the plaintiff is irrelevant to the disposition of a qualified immunity assertion. The appropriate disposition of this claim would have been to deny summary judgment *and* deny the assertion of immunity because the court believed that plaintiff had alleged sufficient facts to show the violation of clearly established law.

The defendants did not appeal the district court's treatment of this issue. *See* Brief for Appellant at 4 n. 3 & 12 n. 10. In fact, they conceded in their brief, as they later did during oral argument, that "the reputational injury aspect of the case is not before the Court in this appeal, and will necessitate further trial proceedings re-

gardless of the outcome of the immunity claims presented here." *Id.* at 12 n. 10. Given the failure of the defendants to appeal the district court's disposition of the reputation claim, I concur in Judge Vance's opinion for the court.

---

388, at 396 (11th Cir.1990) (order vacating prior panel opinion and determining to hear case en banc).

**2.** This court also lacks jurisdiction of qualified immunity dispositions when the district court denies the immunity claim because it needs

substantial additional factual development in order to even assess the claim. *Goddard,* 847 F.2d at 769, 770; *Rich,* 841 F.2d at 1561 n. 1; *see, e.g., Riley v. Wainwright,* 810 F.2d 1006, 1007 (11th Cir.1986).