764 F.2d 1024
 James Dale TANNER,
# 144047, Appellant,
v.
J. Brown HARDY, Former Acting Director, Patuxent
Institution; Arthur Kandel, Associate Director,
Patuxent Institution; Forrest Calhoun,
Jr., Associate Director,
Patuxent
Institution,
Appellees.
 No. 84-6192.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 8, 1985.
Decided June 21, 1985.
 
 Andrew D. Levy, Baltimore, Md. (Frank, Bernstein, Conaway & Goldman, Baltimore, Md., on brief), for appellant.
 Carmina Hughes (Stephen H. Sachs, Atty. Gen., Philip M. Andrews, Asst. Atty. Gen., Baltimore, Md., on brief), for appellees.
 Before RUSSELL, MURNAGHAN, and ERVIN, Circuit Judges.
 MURNAGHAN, Circuit Judge:
 
 
 1
 James Dale Tanner, the plaintiff, has reason to complain, but the central issue raised by his appeal from a grant of summary judgment to the defendants is whether those who have been selected as defendants can be held liable in damages.
 
 
 2
 Following arrest on June 16, 1968, Tanner was charged with rape and incarcerated pending trial. His trial before the Circuit Court for St. Mary's County, Maryland, resulted in a conviction for which he was sentenced to a prison term of eight years counting from June 16, 1968. The Circuit Court for St. Mary's County sent Tanner to the Patuxent Institution for Defective Delinquents at Jessup, Maryland for an evaluation as to whether he was a "defective delinquent."[1]
 
 
 3
 Patuxent was required by the Act to make an examination of one so referred, stating findings as to defective delinquency in a written report to the court which had sentenced him. Md.Ann.Code of 1957, Art. 31B Sec. 7(a) (repealed 1977). Tanner, upon arrival at Patuxent and consistently thereafter, refused to be interviewed by the staff or to cooperate in any way with the evaluation process. Patuxent, consequently, did not send a psychiatric evaluation to the sentencing court, but continued to hold Tanner on the grounds that the requirement of a written report of findings as to defective delinquency was only directory. State v. Musgrove, 241 Md. 521, 217 A.2d 247 (1966).
 
 
 4
 Thereafter, on June 19, 1972, the Supreme Court of the United States held in McNeil v. Director, Patuxent Institution, 407 U.S. 245, 92 S.Ct. 2083, 32 L.Ed.2d 719 (1972) that it was a denial of due process to hold an individual at Patuxent beyond the expiration of the fixed criminal sentence where doing so was based only on the original ex parte order referring him to Patuxent for evaluation. Approximately two months thereafter, the Patuxent staff proceeded to evaluate Tanner solely on the basis of his file and without the benefit of the personal interview which Tanner refused to provide. The Maryland Court of Appeals, in Director, Patuxent Institution v. Cash, 269 Md. 331, 347, 305 A.2d 833, 842 (1973), validated the procedure adopted by Patuxent of diagnosing without the benefit of a personal interview when the unavailability of the person to be evaluated was directly attributable to the individual concerned.
 
 
 5
 A manifest purpose of such incomplete diagnoses was to deal sensibly in advance with the problem which otherwise would be sure to arise upon the running of the fixed sentence imposed. With no evaluation of any kind, a likely consequence would be invocation of a rule that someone in Tanner's position would have to be released, even though an unrehabilitated defective delinquent, since a diagnosis had not been made and, consequently, none had been reviewed by the Maryland court which had requested an evaluation.
 
 
 6
 On August 21, 1972 a diagnostic staff report on Tanner, which concluded that he was a defective delinquent, was sent to the Circuit Court for St. Mary's County with a copy to the State's Attorney for the county.[2]
 
 
 7
 Despite Patuxent's valiant effort to avoid a problem they had foreseen would arise at the conclusion of Tanner's fixed eight year sentence, the Circuit Court for St. Mary's County simply sat on the diagnostic staff report. No hearing on the defective delinquency recommendation ever took place and, indeed, Patuxent received no response from the Circuit Court for St. Mary's County.[3]
 
 
 8
 The statute requires that, in such circumstances, the court summon the individual "forthwith." Md.Ann.Code of 1957, Article 31B Sec. 8(a) (repealed 1977). Nevertheless, only deafening silence emanated from the court. Tanner simply was not summoned to appear. From all that the record discloses, the letters of October 8, 1973 represented the only effort by the defendants, officials of Patuxent, to remedy a patent error in legal procedure which, through the court's failure to act, had come to their attention. Concededly the mistake was not, in the first instance, of their making, but, nevertheless, it was one of which their professional responsibilities necessarily made them fully aware.
 
 
 9
 Sympathy necessarily extends itself to the three defendants. They were faced with a perilous situation created not by them, but by the St. Mary's County Circuit Court.[4] The risk to the safety of society in the release of Tanner was by no means negligible. At the same time, however, the factual surroundings of what amounted to a dilemma not just for the defendants but for the plaintiff as well have by no means been sufficiently explored to make summary judgment appropriate. We are of the opinion that the case should be remanded for further development through submission of opposing affidavits or otherwise.
 
 
 10
 Through such development, it will be possible to ascertain whether, indeed, the defendants did all that it was reasonable to expect they should do to insure that Tanner was not deprived of his rights. Unlike the situation here, the defendant sheriff in Bryan v. Jones, 530 F.2d 1210 (5th Cir.1976), cert. denied, 429 U.S. 865, 97 S.Ct. 174, 50 L.Ed.2d 145 (1976) had been misled by a typographical error not his responsibility. Here, however, the defendants did not rely on any erroneous documents or instructions. They were fully aware of the Circuit Court's failure to do what the law unambiguously called on it to do. The law permitted no discretion on the part of a state court judge to do otherwise.
 
 
 11
 Even if the defendants did not have to take any action prior to June 16, 1976, the date of expiration of Tanner's sentence, it becomes a tangled question of fact whether the defendants had any basis for continuing to confine Tanner at Patuxent until September 9, 1976, i.e., for nearly three illegal months of unjustified imprisonment, when his sentence had expired on June 16, 1976. The defendants were aware of Tanner's June 16, 1976 petition for a writ of habeas corpus. They delayed replying until September 9, 1976, when they joined Tanner in his request for his release.
 
 
 12
 It is a well established principle that qualified immunity, which is the most in the way of immunity to which the defendants are entitled, see Procunier v. Navarette, 434 U.S. 555, 561, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978) (State prison officials and officers were not entitled to absolute immunity in Sec. 1983 action but were entitled to qualified immunity), is a matter on which the burden of proof is allocated to the defendants. Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).
 
 
 13
 The defendants on remand may, indeed, bolster their contention that, faced with the terrible choices presented to them of a) keeping a man illegally imprisoned beyond the term of his sentence or b) releasing someone who, had the Circuit Court of St. Mary's County only acted as it properly should have done, might well have been determined to be a defective delinquent who should not be released from prison, they acted properly in relying on legal advice of the Maryland Attorney General's office. However, to insure an adequate factual basis for that good faith immunity defense there should be detailed information as to whether and when such advice was given and the degree of mature consideration accorded the matter by the Assistant Attorney General to whom the defendants turned and who gave the advice. After all, while the question was a tortured one, the answer seems relatively free from doubt, namely, that one's constitutional right to liberty could not be subverted in the manner here involved. See McNeil v. Director, Patuxent Institution, 407 U.S. at 250, 92 S.Ct. at 2087. See also Martin v. Director, Patuxent Institution, 18 Md.App. 505, 512-14, 308 A.2d 212, 216-217, cert. denied, 269 Md. 762 (1973), cert. denied, 414 U.S. 1160, 94 S.Ct. 921, 39 L.Ed.2d 113 (1974) (With respect to the inmate's constitutional right to liberty, the issue of defective delinquency may be tried after the expiration of the sentence provided it is tried within a reasonable time after the Patuxent Institution made its findings on the inmate's condition). It may well be that the lawyer's advice, in the particular circumstances of the case, was an insufficient basis for insulating the defendants from liability. The receipt of advice from a lawyer is, after all, only one of a number of factors to be considered in determining whether a qualified immunity applies. See McElveen v. County of Prince William, 725 F.2d 954, 958 n. 5 (4th Cir.1984) ("Although consultation with an attorney is not proof of the [State's] good faith it is certainly indicia of good faith and therefore should be considered in evaluating the State's [qualified immunity] defense.") (emphasis in original) (citation omitted).
 
 
 14
 That does, of course, raise an additional question on which fleshing out of the facts on remand might prove helpful. Perhaps that Assistant Attorney General, if the statute of limitations has not expired, should be joined as a defendant.
 
 
 15
 In conclusion, the district court's award of summary judgment in favor of the defendants must be reversed and remanded in order to permit adequate exploration of the question of whether the defendants had a clear and unmistakable duty to release Tanner on June 16, 1976, or at least a duty to advocate Tanner's release without waiting approximately three months before doing so. We have, after all, charged prison officials with a duty to know and act in accordance with a Supreme Court decision rendered only twelve days before the date on which they performed in a manner contrary to the law so recently laid down. See Arebaugh v. Dalton, 730 F.2d 970, 972 (4th Cir.1984) (Sec. 1983 action remanded on qualified immunity issue in order to determine whether state officials had "good faith explanation" for failing to know or act upon relevant Supreme Court decision announced and published twelve days before alleged violation occurred.)
 
 
 16
 Following argument, it was brought to our attention that Arthur Kandel, one of the appellees, had died. The district court, upon remand, shall decide whether a substitution of parties is proper pursuant to F.R.Civ.P. 25(a)(1) (Substitution of Parties (a) Death).
 
 
 17
 REVERSED AND REMANDED.
 
 
 
 [1]
 See Md.Ann.Code of 1957, Article 31B Sec. 5 (repealed 1977) defining a defective delinquent as one who through persistent aggravated anti-social or criminal behavior has evidenced a propensity toward criminal activity and is also intellectually deficient or emotionally unbalanced, thereby clearly demonstrating an actual danger to society
 
 
 [2]
 The report stated that Tanner's lengthy criminal record "indicates continuous violations of the law since 1958 and a progressive increase in the seriousness of these offenses." Tanner's behavior since arriving at Patuxent Institution was described as "very unstable and negativistic." The staff concluded that he "has presented persistent aggravated anti-social behavior and appears to represent a distinct danger to society."
 
 
 [3]
 On October 8, 1973, Patuxent again sent the diagnostic staff report to the presiding judge in St. Mary's County as well as to the State's Attorney and to the Commissioner of Correction. In those letters, Patuxent asserted that "[t]here is nothing to indicate that any change has occurred in this patient since the original evaluation."
 
 
 [4]
 A question which presents itself is whether the Maryland Circuit Court judge, in the first instance, had anything beyond a purely ministerial responsibility to summon Tanner to appear forthwith, once the diagnostic staff report, accompanied by a recommendation that he be found a defective delinquent, reached the court. If so, perhaps judicial immunity of an absolute kind did not apply. See McCray v. State of Maryland, 456 F.2d 1 (4th Cir.1972). In McCray, the court stated that absolute immunity is conferred upon judges in order to allow them to "exercise discretion vigorously and effectively" without the fear of being subjected to burdensome lawsuits. Id. at 3 (emphasis added). However, the court suggested that "[w]hen a judge acts in a non-judicial capacity [and merely performs a mandatory ministerial function such as scheduling a hearing] he pro tanto loses his absolute immunity and is subject to liability as any other state official." Id. at 4 n. 7
 On that basis, maybe the Circuit Court judge, who may well have been more at fault than the three individual defendants, should have been sued. Cf. F.R.Civ.Proc. 19(b) ("If a person ... described [as an indispensable party] cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed."). However, such a suit was not instituted by the plaintiff, nor have the defendants sought to bring him or his estate in as a third-party defendant. Judge Philip Dorsey is no longer living and, from all that the record discloses, limitations would already have set in were he or his estate or the beneficiaries thereof now to be sued. Md.Cts. & Jud. Proc.Code Ann. Sec. 5-101 (1984); Md.Est. & Trusts Code Ann. Sec. 8-103(a) (1974). See also Burket v. Aldridge, 241 Md. 423, 216 A.2d 910 (1966) (Whether suit is brought against a tortfeasor during his lifetime, or against his personal representative after his death, it must be filed both within three years from date of injury and within six months from the qualification of personal representative.)