John E. GREEN, Plaintiff,

v.

J. Kenneth BRANTLEY, Edgar V. Lewis, Craig R. Smith, and Garland P. Castleberry, Defendants.

Civ. A. No. 87–CV–669–JTC.

United States District Court, N.D. Georgia, Atlanta Division.

Jan. 20, 1989.

Gerald Cunningham, Office of Gerald Cunningham, Atlanta, Ga., for plaintiff.

Myles Eric Eastwood, Jones Brown & Brennan and James Randolph Schulz, Office of U.S. Atty., Atlanta, Ga., for Brantley, Lewis, Smith and Castleberry.

## ORDER OF COURT

CAMP, District Judge.

This matter is before the court on defendants' motion for summary judgment. This action is a Bivens action based on a Constitutional Tort.[1] The defendants are federal employees who are being sued in their individual capacities. Plaintiff alleges procedural due process violations based on the Administrative Procedure Act, 5 U.S.C. § 558(c), and the Fifth Amendment of the U.S. Constitution. Plaintiff further alleges a civil conspiracy claim against three defendants for allegedly conspiring to deprive the plaintiff of his First Amendment free speech rights. For the following reasons, the court GRANTS IN PART and DENIES IN PART the defendants' motion for summary judgment.

## I. STATEMENT OF FACTS

This action involves the termination of plaintiff John E. Green's flight examiner status. The plaintiff served as a designated flight examiner for the Federal Aviation Administration ("FAA") for twelve years. The FAA is a component of the Department of Transportation. *See* 49 U.S.C. § 1652(e)(1) (1977), (repealed Jan. 12, 1983). Flight examiners conduct flight tests both for certification of commercial pilots and for aircraft and instrument ratings. Although flight examiners serve as representatives of the FAA, they receive their compensation by charging the examinee a reasonable fee for conducting tests and completing the required reports. *See* 49 U.S.C.App. § 1355(a).

Flight examiners can only conduct such flight tests under "Certificates of Authority" granted by the Federal Aviation Administrator. *See* 49 U.S.C.App. § 1355(a) (1976 and supp.1986) (empowerment of an Administrator to certify private persons as administrators). Flight examiners are appointed for renewable periods of one year. *See* 14 C.F.R. § 183.15(a). However, 14 C.F.R. § 183.15(d) enumerates six circumstances under which the designation may be terminated during its one year duration.

Plaintiff's activities as a flight examiner were supervised by the Mid–South Flight Standards District Office (hereinafter "Mid–South FSDO"), which supervises the examiners in the Atlanta area. Defendant J. Kenneth Brantley is an Operations Inspector at the Mid–South FSDO and conducted the investigation of plaintiff. Defendant Edgar V. Lewis is the Operations Unit Supervisor of the Mid–South FSDO and the immediate supervisor of defendant Brantley. Defendant Craig R. Smith is the Manager of the Mid–South FSDO and the immediate supervisor of defendant Lewis.

In the present case, plaintiff's designation was due to expire on December 31, 1986. Defendant Smith cancelled plaintiff's designation on August 15, 1986, over four months prior to the normal expiration date.

The cancellation of plaintiff's license arose out of an investigation conducted by defendants. In early 1986, defendant Brantley initiated an investigation of the pilot examiners' program under the jurisdiction of the Atlanta Flight Standards office. Brantley reviewed plaintiff's monthly activity report which showed times spent on each flight check. Defendants Brantley and Smith considered the time spent on each flight check inadequate and the total number of flight checks given on particular days too numerous to have been properly conducted. Defendants also had complaints indicating that plaintiff was not conducting the flight tests in accordance with the required time standards.

In early June 1986, defendant Brantley informed plaintiff that he was being investigated. Brantley Affidavit, ¶ 27. Plaintiff, however, was not presented with specific charges at this time, but only told that there was concern over the brief manner in which he had conducted flight tests. Green Deposition, pp. 24, 45, 59, 122; Brantley Affidavit ¶ 27 and Attached Exh. C; Smith Affidavit, Attached Exh. A (Plaintiff letter of 6/12/86) and Exh. B. In fact, Brantley stated in his deposition that

---

**1.** In *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), the Court extended Bivens actions to Fifth Amendment due process claims.

he did not advise plaintiff of the specific charges because "he would just deny it." Brantley Deposition, pp. 160–62; 179–81. *See also* pp. 131–33. Smith stated in his deposition that plaintiff was not given the opportunity to respond because "[i]t did not seem pertinent at the time." Smith Deposition, p. 32. Thus, plaintiff was neither apprised nor given the opportunity to examine the records and complaints upon which such charges were based. *Id.*

On June 12, 1986, plaintiff wrote to defendant Smith requesting that he be informed immediately of any charges and any evidence against him. Defendant Smith replied on June 13, 1986 and refused to make available evidence used in the investigation or delineate specific charges. Smith Affidavit ¶ 10 and Attached Exh. B. Plaintiff made another written demand for evidence used in the investigation and a request for the identity of the two complainants. In early July, 1986, defendant Brantley called plaintiff and informed him that he was to be at a meeting the next day to discuss the investigation. Plaintiff attempted to obtain an alternate date due to the fact that he was booked with check rides the next day. Defendants, however, refused to reschedule the meeting.

On July 7, 1986, defendants Lewis and Smith met with plaintiff. Lewis refused to allow plaintiff to bring an attorney to this meeting. Defendants maintain that plaintiff was told that the time spent on his flight checks was insufficient and that there were numerous written and oral complaints concerning deficiencies in his conduct as a pilot examiner. Defendants also contend that plaintiff was informed of complaints regarding his language and abusive behavior while conducting check rides. Defendants contend that plaintiff was advised of specific charges at the meeting and in a letter that he was given at the conclusion of the meeting.

While defendants contend that plaintiff was given an opportunity to present his position at the meeting, the defendants' own evidence indicates that defendants did most of the talking at this meeting. Smith Affidavit, ¶¶ 16–21. Moreover, plaintiff was never appraised of the statistics, records, and complaints upon which the charges against him were based, making any response uninformed. *Id.* Thus, plaintiff was not presented with any specific charges because he was not given any of the documents used in the investigation. Smith Affidavit, ¶¶ 16–21. Plaintiff contends that the allegations against him were only discussed generally. Moreover, defendants refused to allow plaintiff to bring his attorney to the July 7, 1986 meeting, even in an advisory role. Green Deposition, pp. 106–07.

On August 15, 1986, Smith terminated plaintiff's Certificate in view of reports, records, and public complaints received by his office. Defendants Smith, Lewis, and Brantley determined that it was not in the best interest of the FAA nor the general aviation public and public safety for plaintiff to continue as a designated pilot examiner. Ronald R. Hagadone, Regional Counsel for the FAA, and Eddie Thomas, an attorney in the Office of the Regional Counsel, advised Smith that plaintiff's designation could be terminated without a formal hearing. Smith Affidavit, ¶ 24.

On August 19, 1986, plaintiff's attorney notified defendant Castleberry, Director of the FAA's Southern Region, of plaintiff's problem and requested him to intercede. Plaintiff requested the opportunity to respond to the termination before he lost his license. Defendant Castleberry, however, refused to intercede.

Plaintiff filed the instant action in April, 1987. Plaintiff seeks monetary damages from the defendants acting in their individual capacities. Plaintiff alleges a cause of action for deprivation of his liberty and property interests without a due process hearing in violation of the Fifth Amendment and in violation of the Administrative Procedure Act. Plaintiff amended his Complaint to add a charge of civil conspiracy to violate his First Amendment rights by retaliating against him for testifying against the United States of America.

The defendants have moved for a summary judgment. First, defendants contend that revocation of the plaintiff's flight ex-

aminer's certificate did not require procedural due process pursuant to the Administrative Procedure Act (hereinafter "APA") or the Fifth Amendment. Defendants contend that the flight examiner's certificate does not constitute a Fifth Amendment property or liberty right and is also not a license under § 558(c) of the APA, which require certain due process protections. Second, defendants argue that even if plaintiff's certificate is a protected liberty or property right under the Fifth Amendment or a license under the APA, the meeting afforded plaintiff before the termination of his certificate satisfied procedural due process standards. Defendants finally argue that even if they did not afford plaintiff adequate due process, they are immune from suit under the doctrine of qualified immunity.

## II. THE PLAINTIFF'S RIGHT TO NOTICE AND A HEARING

As previously stated, the plaintiff's certificate as flight examiner was terminated during its one-year period based on 14 C.F.R. § 183.15(d)(4) and (6). This regulation enumerates six circumstances [2] wherein a flight examiner's designation may be terminated during its one-year period.[3] The regulation does not, however, address the manner by which termination during the one-year period is accomplished.

The plaintiff contends that before a designation may be terminated for any other circumstances listed in 14 C.F.R. § 183.15(d), both 5 U.S.C. § 558(c) [4] of the Administrative Procedure Act (hereinafter "APA") and U.S. Constitution mandate a due process hearing.

In opposition, the defendants first argue that the APA is not applicable to the termination of plaintiff's certificate. Defendants maintain that plaintiff's certificate was properly terminated pursuant to 14 C.F.R. § 183.15(d)(4) and (6), which allow termination based on a finding that plaintiff had not properly performed his duties or upon "any reason the Administration considers appropriate." Defendants also argue that the plaintiff has neither a property nor a liberty interest in his certificate so as to trigger Fifth Amendment due process safeguards. Even if plaintiff had a protected liberty or property interest, defendants argue that plaintiff received due process given the standards of *Reid v. Engen,* 765 F.2d 1457, 1463 (9th Cir.1985).

### A. *The APA Applies to the Termination of Plaintiff's License Certificate*

■ The FAA is subject to the statutory provisions of the Department of Transpor-

---

**2.** 14 C.F.R. § 183.15(c) and (d) read as follows:
(c) Unless sooner terminated under paragraph (d) of this section, a designation as a Designated Airworthiness Representative is effective until the expiration date shown on the Certificate of Authority.
(d) A designation made under this subpart terminates—
(1) Upon the written request of the representative;
(2) Upon the written request of the employer in any case in which the recommendation of the employer is required for the designation;
(3) Upon the representative being separated from the employment of the employer who recommended him for certification;
(4) Upon a finding by the Administrator that the representative has not properly performed his duties under the designation;
(5) Upon the assistance of the representative being no longer needed by the Administrator;
(6) For any reason the Administration considers appropriate.

**3.** Termination during the period of designation is distinguishable from non-renewal of a desig-

nation after expiration of the period, and only the former is covered by 5 U.S.C. § 558(c). *See Bankers Life and Casualty Company v. Callaway,* 530 F.2d 625, 634–35 (5th Cir.), *reh'g denied,* 536 F.2d 1387 (5th Cir.1976), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1977) (inapplicability of § 558(c) to failure to renew license).

**4.** 5 U.S.C. § 558(c) (1977) provides in part as follows:
... Except in cases of willfulness or those in which public health, interest, or safety requires otherwise, the withdrawal, suspension, revocation, or annulment of a license is lawful only if, before the institution of agency proceedings therefor, the licensee has been given—
(1) notice by the agency in writing of the facts or conduct which may warrant the action; and
(2) opportunity to demonstrate or achieve compliance with all lawful requirements....

tation. *See* 49 U.S.C.App. § 1655(c)(1) (supp. 1986).[5] Statutory requirements relating to notice, hearings, action upon record, or administrative review which apply to the Secretary or the Administrator are found in 49 U.S.C.App. § 1655(h) (1976 and supp. 1986). These provisions mandate that 5 U.S.C. § 558(c) apply to proceedings by the Department of Transportation or its administrations or boards.

Subchapter 2 of Chapter 5 encompasses 5 U.S.C. §§ 551–559 (1977 and supp. 1986) commonly known as the Administrative Procedure Act ("APA"). A "proceeding," as defined in the APA includes "licensing." 5 U.S.C. § 551(12) (1977). Licensing in turn is the "agency process respecting the withdrawal, limitation, amendment, modification, or conditioning of a license." 5 U.S.C. § 551(9) (1977). 5 U.S.C. § 558(c) sets forth statutory due process requirements that must be followed prior to withdrawal, suspension, revocation, or annulment of a license. 49 U.S.C.App. § 1655(h) (1976 and supp. 1986) mandates that the FAA comply with the APA; therefore, conformity with the due process requirements of 5 U.S.C. § 558(c) is necessary in any "licensing" proceeding, including the revocation of a license. Accordingly, the plaintiff is entitled to the benefits of § 558(c) if his "Certificate of Authority" constitutes a "license."

5 U.S.C. § 551(8) defines "license" to include "the whole or a part of an agency permit, *certificate*, approval, registration, charter, membership, statutory exemption, or *other form of permission* ..." (emphasis added). The plaintiff received permission from the FAA to serve as a flight examiner, and this approval was subsequently embodied in a written document styled a "Certificate of Authority." Both the permission of the FAA and the certificate memorializing such permission constitute "licenses" with the meaning of 5

U.S.C. § 551(8). *White v. Franklin*, 637 F.Supp. 601, 610 (N.D.Miss.1986).

Accordingly, the due process hearing standards set forth in 5 U.S.C. § 558(c) apply to the termination of plaintiff's designation as a flight examiner. Because plaintiff possessed a license from the FAA, he was entitled to the due process hearing set forth in 5 U.S.C. § 558(c) prior to termination of his designation as a flight examiner. This provision of the APA requires (1) "notice by agency in writing of the facts or conduct which may warrant the action" and (2) the "opportunity to demonstrate or achieve compliance with all lawful requirements." Thus, the plaintiff had certain due process protections prior to the revocation of his flight examiner's certificate.

### B. *Plaintiff Has A Fifth Amendment Property Right In His Certificate*

■ The plaintiff asserts a cause of action for damages directly under the due process clause of the Fifth Amendment. *See Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). The Fifth Amendment provides in part that no "person shall be ... denied of life, liberty or property without due process of law." *See Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

In the present case, the plaintiff's license qualifies as a protectable property interest. Plaintiff's license is a valuable Fifth Amendment property right because it affords the plaintiff the means by which he earns his living. *Barry v. Barchi*, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979); *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Wells Fargo Armored Service Corp. v. Georgia Public Service Commission*, 547 F.2d 938, 941 (5th Cir.1977); *White v. Franklin*, 637 F.Supp. at 610. Thus, Fifth Amendment procedural due process protections are nec-

---

**5.** The FAA was established as a component of the Department of Transportation with a separate Administrator. Thus, the FAA, as a component of the Transportation Department, was subject to § 558(c) of the APA, which governs Department of Transportation license proceedings. *See* 49 U.S.C.App. § 1655(h) (1976), *amended by* 49 U.S.C.App. § 1655(h) (Supp.

1986). Later, all "functions, powers, and duties" of the FAA were transferred and vested in the Secretary of Transportation. 49 U.S.C. App. § 1655(c)(1) (Supp.1986). The statutory requirements relating to notice, hearings, action upon the record, or administrative review continue to apply to the FAA. 49 U.S.C.App. § 1653(c) (Supp.1986).

essary before a flight examiner's certificate can be terminated. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

■ Defendants argue that the Transportation Act and its accompanying regulations and language in the Pilot Examiner's Handbook issued to plaintiff allowed defendants to terminate plaintiff's pilot examiner's status at any time. *See* 49 U.S.C.App. § 1355(a); 14 C.F.R. § 183.15; Pilot's Examiner's Handbook ¶ 31(b)-(d). The FAA is a component of the Department of Transportation, and as such, the FAA is subject to the statutory provisions of the Transportation Act. *See supra,* p. 9. 49 U.S.C.App. § 1355(a) does provide that the Secretary of Transportation may rescind any delegation "at any time and for any reason which he deems appropriate." 14 C.F.R. § 183.15 addresses the grounds for FAA revocation of a pilot examiner's certificate and allows revocation of the certificate "upon any reason the Administration considers appropriate." The Pilot Examiner's Handbook similarly provides the FAA with broad discretion to terminate a pilot examiner's certificate. 14 C.F.R. § 183.15 does not address the manner in which the certificate is revoked. The Pilot Examiner's Handbook, however, does set forth the manner in which the certificate should be revoked:

> Cancellations based on paragraphs 31b, c, d, e, f, or g should be handled by a registered or hand-carried letter from the designating field office to the examiner. This letter will clearly state the reasons for the cancellation action, set an immediate effective date, and specify that no certification files will be accepted by the district office after receipt of the letter by the examiner. The letter will request the return of the FAA Form 8430-9, Certificate of Authority, the display-type certificate, FAA Form 8000-5, Certificate of Designation, and all unused agency material and supplies issued to him/her. A copy of this letter will be forwarded to the regional office.

Pilots' Examiner's Handbook, ¶ 31(b). The Pilots' Examiner's Handbook contains procedures for FAA district offices and instructions for appointed pilot examiners.

The above statute, regulation, and handbook provision, however, cannot abrogate the plaintiff's constitutional due process rights under the U.S. Const. amend. V, nor does this statute by its terms supersede the plaintiff's rights under the APA, 5 U.S.C. § 558(c). *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 540–41, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494 (1985); *White v. Franklin,* 637 F.Supp. at 611.

C. *The Plaintiff Has A Fifth Amendment Liberty Right In The Manner In Which His Certificate Was Revoked*

The plaintiff also alleges a deprivation of two distinct liberty interests, specifically loss of reputation and loss of the right to pursue a specific profession, without a Fifth Amendment due process hearing.

■ "Liberty," as used in the Fifth Amendment, includes a person's interest in his good name, reputation, honor, or integrity. *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). However, neither the mere failure to rehire nor the termination of a job constitutes a deprivation of liberty, absent public disclosure of the reasons for the discharge. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). In the present case, the termination of plaintiff's certificate in itself does not constitute a deprivation of a liberty interest. The plaintiff, however, has produced evidence that he was stigmatized by the defendants' disclosure of information concerning the reasons for the termination of his certificate. Green Deposition, pp. 8–11; 125–126. Defendants have produced evidence that denies such a release of information. Brantley Aff. ¶ 34; Smith Aff. ¶ 27; Lewis Aff. ¶ 13; Castleberry Aff. ¶ 9. Accordingly, an issue of fact exists for the jury as to whether the defendants released information that damaged the plaintiff's reputation prior to his termination.

■ The plaintiff also has a Fifth Amendment liberty right to pursue a specific profession. The plaintiff claims that

defendants' actions constituted an unconstitutional deprivation of his right to pursue a specific profession. The United States Supreme Court has held that:

> The right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the "liberty" and "property" concepts of the Fifth Amendment.... *Greene v. McElroy*, 360 U.S. 474 [79 S.Ct. 1400, 3 L.Ed.2d 1377] (1959). *See also Phillips of Bureau of Prisons*, 591 F.2d 966 (D.C.Cir. 1979); *Fitzgerald v. Hampton*, 467 F.2d 755, 761–62 (D.C.Cir.1972). Furthermore the right to pursue a specific profession qualifies as a liberty interest whether the employment is private or public. *See Clemente v. United States*, 568 F.Supp. 1150, 1168 (C.D.Cal.1983), *rev'd on other grounds*, 766 F.2d 1358 (9th Cir.1985).

In the present case, the defendants' actions totally foreclose the plaintiff's opportunity to be a flight examiner. *White v. Franklin*, 637 F.Supp. at 611. As a result, the plaintiff possessed a liberty interest in requiring a Fifth Amendment due process hearing prior to a deprivation.

### D. *The Procedural Due Process Accorded Plaintiff Was Insufficient As A Matter Of Law*

#### 1. Fifth Amendment Procedural Due Process

Upon determining that the plaintiff was entitled to certain procedural due process rights, the next step is to determine the scope of such process. Defendants argue that they are entitled to summary judgment even if the revocation of plaintiff's certificate required due process protections because plaintiff was accorded sufficient due process. The court disagrees. The due process accorded plaintiff was insufficient as a matter of law. The evidence submitted by defendants establishes that the manner in which plaintiff's flight examiner's certificate was revoked did not comport with minimal procedural due process standards.

If a property or liberty interest is implicated, as in the present case, the Fifth Amendment generally requires "that an individual be given an opportunity for a hearing *before* he is deprived" of such interest. *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis in the original). For a hearing to be meaningful, an individual must receive adequate notice. *Goldberg v. Kelly*, 397 U.S. 254, 268, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970). A post-deprivation remedy may be sufficient under certain circumstances. *Matthews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). "The extent to which procedural due process must be afforded ... is influenced by the extent to which he [the plaintiff] may be 'condemned to suffer grievous loss,' and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication." *Goldberg v. Kelly*, 397 U.S. 254, 263, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970).

In this regard, the Supreme Court has found that the amount of due process accorded is determined upon the weighing of three factors: (1) the importance of the individual interest involved, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and (3) the governmental interest in administrative efficiency and, in this case, safety. *Matthews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. at 903.

Thus, the greater the deprivation the greater are the procedural due process protections that should be accorded, barring an overriding governmental interest. The termination of an individual's welfare benefits requires the maximum procedural due process protections of adequate notice and a meaningful hearing. *Goldberg v. Kelly*, 397 U.S. at 264–65, 90 S.Ct. at 1018–19. Adequate notice and meaningful hearing in this context were held to be a "timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally."

*Goldberg,* 397 U.S. at 267–68, 90 S.Ct. at 1020.

The Supreme Court, however, did not require as extensive procedural protections for the termination of Social Security benefits in *Matthews v. Eldridge,* 424 U.S. at 333, 96 S.Ct. at 901–02. In this case, the decision to terminate disability benefits was made primarily from medical evidence and was not dependant on the factual testimony on the recipient. *Id.* Social Security benefits, unlike welfare benefits, do not provide for an individual's minimal subsistence because Social Security benefits are not based on financial need. *Id.* at 340–41, 96 S.Ct. at 905. The *Matthews* court found significant the fact that other forms of governmental assistance become available upon termination of Social Security benefits. *Id.* at 342, 96 S.Ct. at 906. Accordingly, the procedural due process protections accorded need not be as extensive as the full scale evidentiary hearing in *Goldberg v. Kelly.* The agency provided the welfare recipient adequate notice because he had full access to all information relied upon by the state agency. *Id.* at 345, 96 S.Ct. at 907.

In the present case, the plaintiff's deprivation is similar to Fifth Amendment procedural due process rights that are accorded a public employee when he is discharged because both involve the loss of livelihood. The Supreme Court most recently analyzed the amount of procedural due process that should be accorded a public employee in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

In *Loudermill,* the Court found the process due to a terminated school district employee was a pre-termination opportunity to respond, coupled with post-termination administrative procedures. The Court held the applicable Ohio statute, which only provided for post-termination review, to be unconstitutional on its face because it did not provide for a hearing *before* the employee was deprived of a significant property interest.

In *Loudermill,* the plaintiff was not afforded an opportunity to challenge his dismissal prior to his termination. The Court found that an "essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Id.* at 542, 105 S.Ct. at 1493, *quoting, Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). The *Loudermill* Court again recognized that "some opportunity for the employee to present his side of the case is recurringly of obvious value in reaching an accurate decision. Dismissals for cause will often involve factual disputes." *Id.* 470 U.S. at 543, 105 S.Ct. at 1493–94.

The plaintiff's due process deprivation is also similar to the suspension and revocation of a harness racing trainer's license in *Barry v. Barchi,* 443 U.S. at 55, 99 S.Ct. at 2642. Both cases involve the revocation of a license which was a protected property right. In *Barry,* the New York State Racing and Wagering Board suspended the plaintiff's trainer's license with neither a pre-suspension nor post-suspension hearing. A New York statute provided for the trainer's suspension if a post-race test of a horse revealed the presence of drugs, the presumption being that the trainer administered the drugs or was negligent in failing adequately to protect against such occurrence.

The Supreme Court found that although the trainer has a substantial property interest in his license, the State also has an important interest in assuring the integrity of racing. Because of the important State interest, the Court found that the informal pre-suspension hearing in which the trainer proclaimed his innocence and was able to tell his side of the story to be sufficient procedural due process, but only if the dismissal were followed by a more formal post-suspension hearing. The Court reached this conclusion even though nothing in the record demonstrated that the plaintiff was not negligent, and even though the State's investigators failed to unearth an explanation for the drugging that would completely exonerate the trainer. *Id.* at 65, 99 S.Ct. at 2649.

■ Based on the above authority, the plaintiff in the present case was not afforded adequate procedural due process. First, the plaintiff was not afforded adequate notice. Defendants argue that defendant Lewis's letter of July 7, 1986 constituted adequate notice. This letter, however, merely states that defendants had received numerous complaints about defendant without revealing the identity of the complainants or the specific nature of the complaints which were a basis for the revocation of plaintiff's certificate. The letter only states the complaints were not confined to reports of abusive language and hand slamming. The letter also only generally states that defendants received reports that plaintiff had completed test flights in too short a period, less than one hour or in one case .8 hours. Plaintiff was never provided access to the data from which defendants drew such conclusions.

■ Moreover, this letter, which defendants allege was proper notice, was not given to plaintiff prior to the meeting which defendants contend constituted "a meaningful hearing." Plaintiff only received this letter in the "hearing" held on July 7, 1986. Thus, plaintiff did not have an opportunity to prepare to address the charges against him for this meeting to be a "meaningful" hearing. Without adequate notice, the plaintiff could not have prepared to defend himself, rendering any hearing, whether pre-deprivation or post-deprivation, meaningless.

*Barry v. Barchi* supports the conclusion that the notice and hearing afforded the plaintiff prior to revocation of his certificate were insufficient. As seen, both cases involve the revocation of certificates which constitute a Fifth Amendment property right. In both cases, the State also had a significant interest: in *Barry* the integrity of racing and in the present case, an important safety interest. In *Barry*, the Supreme Court found the notice and hearing afforded the plaintiff, which was more extensive than that in the present case, to be insufficient procedural due process.

■ Under *Loudermill* and *Barry*, the informal hearing afforded plaintiff would have been sufficient *if* defendants had promptly followed with a more formal post-revocation hearing and had provided plaintiff with adequate notice of the charges against him *prior* to such a hearing. Defendants, however, did not provide plaintiff with adequate notice or a meaningful post-revocation hearing, despite plaintiff's repeated requests for both.

Defendants cite *Reid v. Engen*, 765 F.2d 1457, 1463 (9th Cir.1985) as support for their position that plaintiff was accorded sufficient procedural due process. This case concerned the National Transportation Safety Board's suspension of a pilot's certificate for 120 days. The case is distinguishable from the present case because it involved a suspension, not a termination. *Reid v. Engen* also involved the Ninth Circuit's review of an administrative tribunal's hearing. In *Reid*, the Ninth Circuit concluded that procedural due process requires adequate notice and an opportunity to be heard. The plaintiff in *Reid* received adequate notice because she was given a written notice of a proposed suspension for violation of specified regulations prior to the informal conference. In contrast, the plaintiff's written notice contained no specific charges or the evidence upon which such charges were based. Also, the present plaintiff was not given this notice prior to the hearing in which he was to defend his actions.

2. Procedural Due Process Under § 558(c) of the Administrative Procedure Act

As shown, plaintiff's Flight Examiner's Certificate constitutes a license from the FAA, which entitles him to a due process protections as set forth in 5 U.S.C. § 558(c) prior to revocation of the certificate. *See supra,* pp. 1574–75. Section 5 U.S.C. § 558 requires (1) "notice by the agency in writing of the facts or conduct which may warrant the action" and (2) the "opportunity to demonstrate or achieve compliance with all lawful requirements."

■ The due process standards under § 558(c) are not as stringent as the maximum procedural due process required by

the Fifth Amendment in *Goldberg v. Kelly.* *See Gallagher & Ascher Co. v. Simon,* 687 F.2d 1067 (7th 1982) (Warning letters and fact customs brokers could request informal hearings prior to suspension of their licenses sufficient to satisfy § 558(c)); *New York Pathological & X–Ray Laboratories, Inc. v. Immigration and Naturalization Services,* 523 F.2d 79 (2d Cir.1975); *Holt Hauling and Warehousing System v. U.S. Customs Service,* 650 F.Supp. 1013 (Ct.Int'l Trade 1986). *See also Bankers Life & Casualty Co. v. Callaway,* 530 F.2d 625 (5th Cir.1976), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791.

■ Although § 558(c) does not confer on the plaintiff a right to a full adjudicatory hearing prior to the termination of his license, it does afford him certain procedural protections. The notice requirement of § 558(c) does require that the licensee is advised with some specificity of the charges against him prior to termination. *See Gallagher,* 687 F.2d at 1070 (licensed customs broker advised of the nine late entries, which he was required to file on certain customs documents, for which he was under investigation); *Burkett v. United States,* 402 F.2d 1002 (1968) (notice about civil service commission employee's malicious statements about superior for which he was discharged held to be inadequate under § 558(c) because it was not specific about statements made and about the person to whom it was made). *See Trumbull Division, Owens–Corning Fiberglass Corp. v. City of Minneapolis,* 445 F.Supp. 911 (D.Minn.1978).

As seen, plaintiff's "notice" letter of July 7, 1986 did not detail the basis of the complaints against him or by whom such complaint were made. Moreover, the letter did not constitute adequate notice because the plaintiff did not receive the letter prior to the hearing in which he was supposed to defend his actions.

■ The second requirement of § 558(c), an opportunity to demonstrate compliance or to achieve compliance, could not have been met in this case. Plaintiff could not demonstrate compliance or achieve compliance because he was not apprised of the specific charges against him.

### 3. Conclusion

In sum, even if defendants' version of the facts surrounding the termination of plaintiff's certificate are taken as true, the defendants did not comport with the minimal standards of procedural due process. The notice afforded plaintiff in early July 1986 was not "adequate" under the Fifth Amendment or § 558(c) of the APA because plaintiff was not advised of specific charges. Brantley ¶ 27 and Attached Exh. C; Smith Affidavit, Attached Exh. A (Plaintiff letter of 6/12/86) and Exh. B. Thus, as a matter of law, plaintiff was denied the procedural due process that should have been accorded him prior to the termination of his flight examiner's status.

However, even if adequate notice had been provided in this case, the meeting, which defendants point to as an adequate pre-deprivation hearing, did not constitute sufficient procedural due process under the Fifth Amendment. Defendants' own evidence establishes that the "hearing" afforded plaintiff was a one-sided dialogue in which plaintiff was not given a meaningful opportunity to refute the charges against him. Smith Affidavit, ¶¶ 16–21. Plaintiff's attorney was not even permitted to attend this meeting in an advisory capacity. Green Deposition, pp. 106–07. While this court recognizes the government's important interest in safety may have warranted a meaningful post-termination hearing in this case, defendants refused to meet with plaintiff after they revoked his certificate. Thus, defendants' own evidence establishes that the notice and hearing afforded plaintiff were clearly inadequate in light of minimal standards of due process. Defendants are not entitled to summary judgment on this basis. Accordingly, defendants' motion for summary judgment is DENIED on plaintiff's claims based on the APA and the Fifth Amendment.

### III. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM THAT CERTAIN DEFENDANTS CONSPIRED TO DEPRIVE HIM OF HIS FIRST AMENDMENT RIGHTS

■ On April 29, 1988, plaintiff filed an amended complaint, adding a claim based

on the First Amendment. Plaintiff alleged that in retaliation for his giving an affidavit as an expert witness in a previous action involving the revocation of a pilot examiner's certificate, defendants Brantley, Lewis, and Smith conspired against plaintiff to cause his pilot examiner's designation to be withdrawn.

A claim for civil conspiracy in a Bivens action requires allegations of facts sufficient to show that there was an agreement between the parties to inflict the wrong or injury upon the plaintiff and an overt act that results in damage. *Crowe v. Lucas,* 595 F.2d 985 (5th Cir.1979). Liability for civil conspiracy depends on performance of some underlying tortious act; thus, conspiracy is not independently actionable, but rather, it is means for establishing vicarious liability for the underlying tort. *Halberstam v. Welch,* 705 F.2d 472 (D.C.Cir. 1983). The underlying tort in this Bivens action is plaintiff's First Amendment claim. *See, e.g., Scherer v. Balkema,* 840 F.2d 437 (7th Cir.1988), *cert. denied,* — U.S. —, 108 S.Ct. 2035, 100 L.Ed.2d 620.

In the present case, however, no evidence exists that would allow the inference that defendants conspired to deprive plaintiff of his First Amendment rights. The plaintiff has not rebutted the defendants' evidence that they had no knowledge that plaintiff had ever been an expert witness. *See* Brantley Deposition, p. 197; Smith Deposition, pp. 103–04; Lewis Supplemental Affidavit. Accordingly, plaintiff has not established the essential element of a civil conspiracy, that the defendants agreed to commit an illegal act. *Crowe v. Lucas,* 595 F.2d 985 (5th 1979). The defendants in the present case could not have formed an illegal agreement to deprive plaintiff of his First Amendment right to testify as an expert witness when they knew nothing of such testimony. Accordingly, summary judgment is GRANTED on plaintiff's conspiracy claim.

## IV. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Defendants assert that even if this court should find a violation of procedural due process, summary judgment should be granted in their favor because defendants are entitled to qualified immunity. Qualified immunity is a doctrine which expresses a justified concern with independent and honest decision making by government officials. As stated by the Supreme Court, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

Several aspects of the doctrine of qualified immunity should be noted. First, the Supreme Court has largely eliminated any subjective inquiry with regard to the actual good faith of the government official. *Harlow,* 457 U.S. at 800, 102 S.Ct. at 2727; S. Nahmod, Civil Rights and Civil Liberties Litigation §§ 8.03–8.04 (2d ed. 1986). The result is that the question of qualified immunity is normally to be determined by the court as a matter of law upon a motion for summary judgment: "On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time any action occurred." *Harlow* at 457 U.S. at 818, 102 S.Ct. at 2738. The articulated policy is to protect the official not only from damages, but also from the expense and inconvenience of protracted litigation, where appropriate.

In applying the test for determining whether qualified immunity applies, the court presumes that the official was aware of "settled" constitutional rights:

> ... an act violating a student's constitutional rights can be no more justified by ignorance or a disregard of settled, indisputable law on the part of one entrusted with supervision of students' daily lives than by the presence of actual malice.

*Wood v. Strickland,* 420 U.S. 308, 321, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1978), *rev'd on other grounds, Harlow,* 457 U.S. at 800, 102 S.Ct. at 2727.

Recently, the Supreme Court has given additional content to the meaning of "settled" constitutional rights. In a 1987 opinion, the Court requires that the right be established with "particularity" before a reasonable official can be held to have violated "clearly established" statutory or constitutional rights:

> [The right] must have been "clearly established" in a more particularized, and hence more relevant, sense. The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right before a court can find that the official is not entitled to qualified immunity.

*Anderson v. Crieghton*, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (June 25, 1987). With regard to due process violations, the *Anderson* court stated, "... the right to due process of law is quite clearly established by the due process clause, and thus there is a sense in which any action that violates that clause (no matter how unclear it may be that the particular action is in violation) violates a clearly established right." *Id.* 107 S.Ct. at 3038. However, the Court cautioned, "[b]ut if the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of *Harlow*." *Anderson*, 107 S.Ct. at 1038.

Even though *Anderson* requires that the law be sufficiently clear that a reasonable official should have known of it, *Anderson* does not require legal precedent to address the precise situation with which the official was faced:

> [t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of preexisting law the unlawfulness must be apparent.

*Id.* at 3039. *See also Hicks v. Feeney*, 770 F.2d 375, 379–80 (3d Cir.1985).

In summary, qualified immunity requires an objective analysis to determine if the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights" of plaintiff. *Wood*, 420 U.S. at 321, 95 S.Ct. at 1000. According to *Anderson*, qualified immunity requires not only a finding that general legal principles were clearly established, but also a finding that the law was clearly established with such particularity that a reasonable official should have known it applied to the facts of his case. Upon such findings, a reasonable official is presumed to know settled constitutional law.

However, *Harlow* requires another step in the qualified immunity analysis. If the official violated settled constitutional premises, as defined by the court, the official claiming the defense may still be entitled to qualified immunity under exceptional circumstances:

> Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained.

*Harlow v. Fitzgerald*, 457 U.S. at 819, 102 S.Ct. at 2738.

Applying the above principles, *Anderson* first requires a two-part, but objective, analysis of whether the law was clearly established in the present case: (1) whether the law is sufficiently established such that a reasonable FAA official would have known that the plaintiff's certificate constituted a protectable right under the Fifth Amendment or § 558(c) of the APA, which require certain due process protections before revocation; (2) if so, whether the law is sufficiently established that a reasonable FAA official would have known that the process afforded the plaintiff in this case was insufficient.

 Whether a reasonable FAA official should have known that the plaintiff's certificate constituted a protected right, which required due process prior to its revocation, involves an analysis of the law at the time of the revocation. *McCann v. T. Coughlin*, 698 F.2d 112, 124 (2d Cir.1983). Federal officials have been held to incur individual liability for depriving an individual of procedural due process under the Fifth

Amendment since 1979. *Davis v. Passman*, 442 U.S. at 228, 99 S.Ct. at 2264. The license in question is a property right which is entitled to Fifth Amendment protection. *Barry v. Barchi*, 443 U.S. at 55, 99 S.Ct. at 2642; *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1972); *Wells Fargo Armored Service Corp. v. Georgia Public Service Commission*, 547 F.2d 938, 941 (5th Cir.1977); *White v. Franklin*, 637 F.Supp. at 610. It was also well settled that plaintiff had certain liberty rights entitled to protection under the Fifth Amendment. *Board of Regents v. Roth*, 408 U.S. at 573, 92 S.Ct. at 2707; *Greene v. McElroy*, 360 U.S. at 474, 79 S.Ct. at 1400. Plaintiff's certificate also clearly constituted a license within the meaning of the APA, which required due process. *Gallagher*, 687 F.2d at 1067. Most importantly, just two months prior to defendants initiating their investigation, the United States District Court for the Northern District of Mississippi held the revocation of an FAA pilot examiner's certificate required due process protections under both the Fifth Amendment and the APA. *White v. Franklin*, 637 F.Supp. at 601. *White v. Franklin*, however, did not discuss what quantum of due process is required. *Id.* In summary, the court concludes that the law was well settled at the time of the revocation of plaintiff's certificate that his certificate constituted a protected right, which required certain due process prior to its revocation.

The court must also consider whether the law on due process has been clearly established with such particularity that it could be applied to the facts of this case, in other words, whether a reasonable FAA official should have known that the due process accorded plaintiff was insufficient. This question also requires an analysis of law existing at the time of the revocation. *McCann v. T. Coughlin*, 698 F.2d at 124. The law on minimal procedural due process standards has been clearly established for some time in that plaintiff was entitled to *adequate* notice and a *meaningful* hearing. *Goldberg v. Kelly*, 397 U.S. at 267, 90 S.Ct. at 1020. Supreme Court precedent has clearly particularized the amount of due process that should be accorded in situations similar to the present case. *See Barry v. Barchi*, 443 U.S. at 55, 99 S.Ct. at 2642; *Cleveland Board of Education v. Loudermill*, 470 U.S. at 532, 105 S.Ct. at 1488. These cases clearly establish that the notice and hearing accorded the plaintiff were insufficient as a matter of law.

Once it is determined that defendants violated plaintiff's settled constitutional rights, *Harlow* requires further analysis of whether the defendants have proved extraordinary circumstances which show a reasonable official should not have known he was violating those rights. *See* 457 U.S. at 819, 102 S.Ct. at 2738. *See also Barnett v. Housing Authority of City of Atlanta*, 707 F.2d 1571, 1583 (11th Cir. 1983). In the present case, the following factors arguably could be "extraordinary circumstances": the defendants' reliance on the requirements of the Pilot Examiners Handbook; the established policy of the FAA which had been to afford only those minimal due process protections afforded in the FAA Examiners Handbook; and the defendants' consultation with regional counsel's office to determine if any additional requirements were necessary in order to revoke plaintiff's certificate.

Courts have recognized that an extraordinary circumstance may be where the defendant seeks legal advice before acting. *See Watertown Equipment Co. v. Norwest Bank Watertown*, 830 F.2d 1487, 1495 (8th Cir.1987), *cert. denied*, — U.S. ——, 108 S.Ct. 1723, 100 L.Ed.2d 188 (1988). Courts have generally found that the advice of an attorney may be a factor in shielding a defendant from liability under § 1983. *See Duchesne v. Sugarman*, 566 F.2d 817, 833 n. 32 (2d Cir.1977); *Tanner v. Hardy*, 764 F.2d 1024, 1027 (4th Cir.1985); *Crowe v. Lucas*, 595 F.2d 985, 992 (5th Cir.1979). While this court finds no precedent addressing an official's reliance on departmental policy and handbook provisions to constitute an extraordinary circumstance, such reliance would appear to be similar to that of counsel's advice.

Reliance on advice of counsel alone, however, will not satisfy an official's burden of

acting reasonably. *Watertown,* 830 F.2d 1495. The record must reflect whether the attorney's advice was equivocal and whether the official was faced with a "perilous" or "unique" situation. *Id.* Also, "to insure an adequate factual basis for that good faith immunity defense there should be detailed information as to whether and when such advice was given and the degree of mature consideration accorded the matter by the [attorney] ... to whom the defendants turned and who gave the advice." *Tanner,* 764 F.2d 1027.

Although the record in the present case reflects that defendants turned to counsel for advice, it does not address the above concerns: whether the advice was equivocal; whether a "perilous" or "unique" situation existed; and whether mature consideration was accorded the matter by the attorney. Thus, defendants have failed to carry their burden of persuasion that their reliance on advice of counsel constituted an extraordinary circumstance affording them qualified immunity even though the law was clearly established. *See Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39.

Moreover, summary judgment is inappropriate because this is a situation where the defendant official's subjective state of mind —i.e., what he or she actually knew—may be relevant. *See* S. Nahmod, *Civil Rights and Civil Liberties Litigation* § 8.03 (2d ed. 1986). As Justices Brennan, Marshall, and Blackmun pointed out in their concurring opinion in *Harlow,* the objective standard for analyzing qualified immunity "would not allow the official who *actually knows* that he was violating the law to escape liability for his actions, even if he could not 'reasonably have been expected' to know what he actually did know." 457 U.S. at 821. This subjective inquiry becomes relevant where the state of the law is sufficiently unambiguous at the time of the alleged violation that it could have been known. *Id.* Because the state of the law was clearly established at the time of the due process violation in the present case, this subjective inquiry is relevant. If defendants knew that their actions violated clearly established law despite their counsel's advice and the handbook provisions, they are not entitled to qualified immunity. Nothing in the record disputes such a conclusion.

Thus, defendants have not carried their burden of persuasion in demonstrating extraordinary circumstances which lead the court to conclude, as a matter of law, a reasonable official in their situation would not have known that he was affording plaintiff insufficient due process. Under the test as refined by the *Harlow* opinion, the court concludes the defendants have not carried their burden of persuasion of establishing extraordinary circumstances such that defendants neither knew nor should have known of the clearly established relevant legal standard. 457 U.S. at 818–819, 102 S.Ct. at 2738–39. Accordingly, defendants are not entitled to summary judgment on their claim of qualified immunity, and the court DENIES the defendants' motion for summary judgment on this claim.

## V. CONCLUSION

In sum, defendants' motion for summary judgment is GRANTED as to plaintiff's conspiracy claim and DENIED with respect to all other claims. Accordingly, defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

SO ORDERED.